# BRANDON ET AL. *v.* HOLT, DIRECTOR OF POLICE FOR THE CITY OF MEMPHIS, ET AL.

No. 83–1622.   Argued November 5, 1984—Decided January 21, 1985

STEVENS, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, and O'CONNOR, JJ., joined. BURGER, C. J., filed an opinion concurring in the judgment, *post*, p. 473. REHNQUIST, J., filed a dissenting opinion, *post*, p. 474.

*Eric Schnapper* argued the cause for petitioners. With him on the briefs were *Elizabeth A. McKanna, G. Philip Arnold, William E. Caldwell,* and *J. LeVonne Chambers.*

*Henry L. Klein* argued the cause for respondents. With him on the brief were *Clifford D. Pierce, Jr., Charles V. Holmes,* and *Paul F. Goodman.**

JUSTICE STEVENS delivered the opinion of the Court.

The District Court entered a damages judgment against the Director of the Memphis (Tenn.) Police Department in his official capacity. *Brandon* v. *Allen,* 516 F. Supp. 1355, 1361 (WD Tenn. 1981). The Court of Appeals for the Sixth Circuit reversed, holding that he was protected by qualified immunity. *Brandon* v. *Allen,* 719 F. 2d 151, 153 (1983). The question presented is whether the damages judgment is payable by the city of Memphis because the Director was sued in his official capacity or whether the Director is individually liable, but shielded by qualified immunity.

Petitioners brought this action under 42 U. S. C. § 1983.[1] They alleged and proved that Robert J. Allen, who was then

---

*Solicitor General Lee, Acting Assistant Attorney General Willard, Deputy Solicitor General Geller, Bruce N. Kuhlik, Barbara L. Herwig,* and *Wendy M. Keats* filed a brief for the United States as *amicus curiae* urging reversal.

[1] That section provides, in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

a Memphis police officer, viciously assaulted them on March 5, 1977.[2] They also proved that Allen had a history of violent and irregular behavior[3] that was well known within the Police Department.[4]

party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2] The following excerpt from the District Court's findings of fact adequately reflects the character of the incident:

"[Petitioners], who were seventeen years of age, drove to the Memphis Hunt and Polo Club while on a date and parked in a dark and secluded driveway area. . . . After approximately thirty minutes had elasped, a Chevrolet pickup truck entered the driveway where [petitioners] were parked. . . . The driver of the truck identified himself to [petitioners] as a police officer and showed them an official police identification card bearing the name and photograph of Robert J. Allen. . . . Mr. Allen ordered Mr. Muse to step out of the car. After briefly questioning him, Officer Allen maliciously, and without provocation, struck Mr. Muse in the neck and head with his fist and then stabbed and cut Muse on the neck and ear with a knife. As Officer Allen tried to break into the car where [petitioner] Elizabeth A. Brandon was seated, Mr. Muse jumped into the driver's side of the car and quickly drove away. Officer Allen fired one shot at the escaping vehicle from his police revolver. The bullet shattered the front window on the driver's side of the car. Officer Allen followed plaintiffs in a high speed chase which ended at St. Joseph's Hospital East, where plaintiffs sought medical care and assistance and reported the unprovoked attack upon them by Officer Allen." *Brandon* v. *Allen*, 516 F. Supp. 1355, 1357 (WD Tenn. 1981).

[3] Officer Allen's police file records contained 20 complaints against him when he left the Memphis Police Department. They included complaints for "serious abuse of police authority and use of unnecessary force." *Id.*, at 1358.

[4] The District Court found that Officer Allen's "reputation for displaying maladaptive behavior was well known among Police officers in his precinct." *Ibid.* The court also found that Allen's colleagues commented thusly when the March 5 incident was reported to them: "They finally caught up with him; he's a quack; Allen has done something this time that he can't get out of." *Ibid.* Moreover, the court found that Allen's fellow officers regarded him as a "mental case"; that Allen rode in his squad car alone because of the reluctance of other officers to ride with him; and that Allen boasted of killing a man in the course of duty. *Ibid.* Additionally, the District Court wrote:

E. Winslow Chapman had been the Director of the Memphis Police Department for approximately six months when Officer Allen attacked the petitioners. It is undisputed that Chapman had no actual knowledge of Allen's disciplinary record. The District Court found, however, that "Director Chapman *should have known* that Officer Allen's dangerous propensities created a threat to the rights and safety of citizens."[5] The Director's lack of actual knowledge of Allen's propensities was found to have been caused by the "policies in effect during that period of Mr. Chapman's relatively new administration," which policies included "the inherently deficient nature of police administrative procedures involving the discovery of officer misconduct."[6]

Petitioners sought damages from Officer Allen and from Director Chapman. Allen did not defend the action and a default judgment was entered against him for both compen-

---

"Officer Allen has often stated to other officers that he wished he knew the exact bullet spread in the chest of the man he killed. Officer Allen referred to a pair of gloves in his possession as his 'killing gloves,' and he would ceremoniously put those gloves on his hands when he was called to the scene of a crime." *Ibid.*

[5] *Id.*, at 1360.

[6] Regarding these policies and procedures, the District Court wrote:

"Due to a code of silence induced by peer pressure among the rank-and-file officers and among some police supervisors, few—if any—formal complaints were ever filed by police personnel. Furthermore, when complaints were filed by citizens, little disciplinary action was apparently taken against the offending officer. Instead, a standard form letter, bearing Mr. Chapman's signature, was mailed to each complainant, assuring the person that appropriate action had been taken by the Police Department, even if such action had not in fact been taken. This tended to discourage follow-up measures by the complaining citizen. Perhaps, Mr. Chapman's belief that it was better to take no disciplinary action than to act and later be reversed by a review board was responsible for this obviously inadequate solution. The end result was twofold: 1) Mr. Chapman's procedures were highly conducive to 'covering up' officer misconduct; 2) the Police Director and many of his supervisors were totally insulated from knowledge of wrongdoing by officers as a result of policies in effect during that period of Mr. Chapman's relatively new administration." *Id.*, at 1361.

satory and punitive damages. The award against Director Chapman was, however, limited to compensatory damages.[7] In its findings and conclusions, the District Court repeatedly and unambiguously stated that the liability of Director Chapman was "in his official capacity."[8]

The Court of Appeals reversed the judgment against Director Chapman on the ground that he had "acted in good faith and is accordingly entitled to immunity."[9] In explaining its holding, the Court of Appeals rejected the petitioners' contention that the action against Chapman was tantamount to an action against the city of Memphis. The court wrote:

> "The plaintiffs' argument that the qualified immunity is inapplicable simply because they sued Chapman in his official capacity is unavailing. Under *Owen v. City of Independence*, 445 U. S. 622 . . . (1980), a municipality is not entitled to claim the qualified immunity that the city's agents can assert. But this is a suit against an individual, not the city. In reality, plaintiffs are attempting to amend their complaint so as to treat the Police Director as though he were the City in order to avoid the qualified

---

[7] Petitioner Muse recovered $21,310.75 in compensatory damages and out-of-pocket expenses; petitioner Brandon recovered $5,000. App. 36a.

[8] The District Court initially summarized: "This is a civil action against the Honorable E. Winslow Chapman, *in his official capacity as director of the Memphis Police Department* and former Memphis Police Officer Robert J. Allen." 516 F. Supp., at 1356 (emphasis added). It also later stated that "Mr. Chapman was sued *in his official capacity as an agent of the Memphis Police Department*," *id.*, at 1359 (emphasis added), and that "[b]ecause Mr. Chapman, *as Police Director*, should have known of Officer Allen's dangerous propensities the Court finds that he must be held liable, *in his official capacity*, to the plaintiffs." *Id.*, at 1360 (emphasis added). Finally, the court concluded: "Accordingly, Mr. Chapman *in his capacity as Director of the Memphis Police Department* must be held liable to plaintiffs in this case." *Id.*, at 1361 (emphasis added).

[9] *Brandon* v. *Allen*, 719 F. 2d 151, 154 (1983). The Court of Appeals also held that the award of compensatory damages against Allen was inadequate. *Id.*, at 153.

immunity which shields Director Chapman. Such an argument is without support in precedent or reason."[10]

We granted certiorari to consider the validity of that argument. 467 U. S. 1204 (1984). We now reverse.

## I

In *Monroe* v. *Pape*, 365 U. S. 167, 187–192 (1961), the Court held that a city was not "a person" within the meaning of 42 U. S. C. § 1983. That construction of § 1983 protected municipalities from liability in cases of this kind until June 6, 1978, when we decided *Monell* v. *New York City Dept. of Social Services*, 436 U. S. 658. The complaint in this case was filed on February 22, 1978, before *Monroe* v. *Pape* was overruled; this explains why the city of Memphis was not named as a defendant in this case. The timing of the complaint may also explain why petitioners did not expressly allege at the outset of the litigation that they were suing Chapman in his official capacity as Director of Police of the Memphis Police Department.[11]

The course of proceedings after *Monell* was decided did, however, make it abundantly clear that the action against Chapman was in his official capacity and only in that capacity. Thus, in petitioners' response to a defense motion for summary judgment, petitioners' counsel stated:

> "Defendant Chapman is sued in his official capacity as Director of Police Services, City of Memphis, Tennessee. '[O]fficial capacity suits generally represent an action against an entity of which an officer is an agent. . . .

---

[10] *Id.*, at 154.

[11] The caption and the body of the complaint named as a defendant, "E. Winslow Chapman, Director of Police." Complaint, *Brandon* v. *Allen*, Civil Action No. 78–2076 (WD Tenn.). The Mayor of Memphis was also named; the District Court granted summary judgment in his favor. App. 13a–18a.

> *Monell* v. *New York Department of Social Services*, 436
> U. S. 658, 690 n. 55 (1978).'"[12]

The point was reiterated in counsel's opening statement,[13] in the trial court's evidentiary rulings,[14] in the findings on liability,[15] and in the proceedings relating to damages in which it was recognized that our decision in *Newport* v. *Facts Concert, Inc.*, 453 U. S. 247 (1981), precluded an award of punitive damages against Director Chapman.[16]

The Court of Appeals also repeatedly noted that the suit against Chapman was "in his official capacity."[17] Moreover, while the appeal was pending Director Chapman left office and was replaced by John D. Holt. Pursuant to Rule 43(c)(1) of the Federal Rules of Appellate Procedure, Holt was automatically substituted as a party.[18] It is Director Holt

---

[12] Brief for Petitioners 19.

[13] Counsel stated:

"Mr. Chapman is sued in this lawsuit in his official capacity, and as was stated in Monell versus New York City Department of Social Services, a 1978 Supreme Court case, official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.*, at 20–21.

See also Tr. 202 ("Mr. Chapman is not sued individually, but in his official capacity") (statement of petitioners' counsel during trial).

[14] The trial court held that certain out-of-court statements by police officers were admissible because the officers were employed by a party to the case, namely the city of Memphis. See *id.*, at 17–21, 45–47.

[15] See n. 8, *supra.*

[16] Chapman's attorney argued that *Newport* made it clear that no award of punitive damages could be made against Chapman "since he was found liable in his official capacity." See Brief for Defendant E. Winslow Chapman on Issue of Damages in No. C–78–2076 (WD Tenn.), p. 1.

[17] 719 F. 2d, at 152, 153, 154; see also Order Denying Petition for Rehearing En Banc, *Brandon* v. *Allen*, Nos. 82–5321, 83–5346 (CA6) ("We do not believe that a judgment for damages against a police official in his official capacity is the same as a judgment against the city itself").

[18] Rule 43(c)(1), entitled *"Public officers; death or separation from office,"* provides:

"When a public officer is a party to an appeal or other proceeding in the court of appeals in his official capacity and during its pendency dies, resigns

who appears as a respondent in this Court, and there is not even an arguable basis for claiming that the record would support an award of damages against him individually.

Given this state of the record, even at this late stage of the proceedings, petitioners are entitled to amend their pleadings to conform to the proof and to the District Court's findings of fact.[19]  Moreover, it is appropriate for us to proceed to decide the legal issues without first insisting that such a formal amendment be filed; this is because we regard the record as plainly identifying petitioners' claim for damages as one that is asserted against the office of "Director of Police, City of Memphis," rather than against the particular individual who occupied that office when the claim arose. Petitioners are claiming a right to recover damages from the city of Memphis.

## II

In at least three recent cases arising under § 1983, we have plainly implied that a judgment against a public servant "in his official capacity" imposes liability on the entity that he represents provided, of course, the public entity received

---

or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party.  Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded.  An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution."

See also this Court's Rule 40.3; Fed. Rule Civ. Proc. 25(d)(1).

[19] See Fed. Rule Civ. Proc. 15(b); 3 J. Moore, Federal Practice ¶ 15.13[2], p. 15–157 (2d ed. 1984) (amendment to conform to evidence may be made at any time); id., at 15–168 (Rule 15(b) amendment allowed "so long as the opposing party has not been prejudiced in presenting his case"); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1491, pp. 453, 454 (1971 ed. and Supp. 1983) (Rule 15(b) is "intended to promote the objective of deciding cases on their merits rather than in terms of the relative pleading skills of counsel"); ibid. ("[C]ourts should interpret [Rule 15(b)] liberally and permit an amendment whenever doing so will effectuate the underlying purpose of the rule").

notice and an opportunity to respond.[20]   We now make that point explicit.

In *Monell*, the City of New York was not itself expressly named as a defendant.   The suit was nominally against the city's Department of Social Services, but that Department had no greater separate identity from the city than did the Director of the Department when he was acting in his official capacity.   For the purpose of evaluating the city's potential liability under § 1983, our opinion clearly equated the actions of the Director of the Department in his official capacity with the actions of the city itself.[21]

*Hutto* v. *Finney*, 437 U. S. 678 (1978), was an action against state officials rather than municipal officers.   Notwithstanding our express recognition that an order requiring the Arkansas Commissioner of Corrections to pay the plaintiff's counsel fees would be satisfied with state funds, we sustained the order against an Eleventh Amendment challenge.   We considered it obvious that the State would pay the award because the defendants had been sued in their "official capacities."[22]

Less than two years later, we decided *Owen* v. *City of Independence*, 445 U. S. 622 (1980), a § 1983 action in which the complaint named as defendants "the city of Independence, City Manager Alberg, and the present members of the City Council in their official capacities."[23]   We held that the qualified immunity that protects public servants acting in good faith was not available to those defendants.   In so holding, we expressly distinguished between suits against government officials "in their individual capacities" on the

---

[20] Here, the Police Department and the city received notice; no claim is made that the Director of Police and the city were without due notice of the proceedings.

[21] We stated that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." 436 U. S., at 658, 690, n. 55.

[22] See 437 U. S., at 693.

[23] 445 U. S., at 630.

one hand, and those in which "only the liability of the municipality itself was at issue," on the other.[24]

Because the Court of Appeals failed to apply that distinction in this case, it erred. Our holding in *Owen*, that a municipality is not entitled to the shield of qualified immunity from liability under § 1983, requires a reversal of the Court of Appeals' judgment. Accordingly, the judgment is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.[25]

*It is so ordered.*

CHIEF JUSTICE BURGER, concurring in the judgment.

This case presents two issues: (1) was the Director of Police, as a matter of law, sued in his official capacity? (2) does a judgment against the Director of Police in his official capacity impose liability against the city?

It does not make a fetish out of orderly procedure to say that if a claimant seeks damages from a municipality, this should be done by making it a named party defendant; that will assure the municipality has notice and an opportunity to respond. At the latest, a claimant should move at the close of the case to amend the pleadings to conform with the proof.

---

[24] We wrote:

"The governmental immunity at issue in the present case differs significantly from the official immunities involved in our previous decisions. In those cases, various government officers had been sued in their individual capacities. . . . Here, in contrast, *only the liability of the municipality itself is at issue, not that of its officers.* . . ." *Id.*, at 638, n. 18 (emphasis added).

[25] As an alternative ground for affirming the judgment of the Court of Appeals, respondents argue that the record does not establish that petitioners' injury was caused by the kind of "policy or custom" that "may fairly be said to represent official policy" of the city of Memphis. See *Monell*, 436 U. S., at 694. Because the Court of Appeals did not address this argument, we do not consider it. *Monsanto* v. *Spray-Rite Service Corp.*, 465 U. S. 752, 759–761, n. 6 (1984); *Adickes* v. *S. H. Kress & Co.*, 398 U. S. 144, 147, n. 2 (1970); *Duignan* v. *United States*, 274 U. S. 195, 200 (1927).

It is an odd business for this Court, the third and final tribunal, to treat the issue in a casual, offhand way; modern pleading is less rigid than in an earlier day, but it is not too much to ask that if a person or entity is to be subject to suit, the person or the entity should be named. I agree with JUSTICE REHNQUIST that it is a dubious business to encourage such shoddy pleading practices, but the courts have crossed that bridge. I join only the judgment.

JUSTICE REHNQUIST, dissenting.

The Court's decision in this case announces two propositions, both of which seem wrong to me, but which in any event are mutually inconsistent.

Part I holds that petitioners are entitled to amend their pleadings in this Court to add the city of Memphis as a party defendant. The Court relies for this holding on Federal Rule of Civil Procedure 15(b), and on citations to texts discussing that Rule. The entire presentation of this issue in this Court consisted of one sentence in petitioners' reply brief, and therefore the Court is seriously handicapped in deciding the question—particularly since it is the sort of issue with which this Court almost never deals, but which is dealt with regularly by the district courts. I think the Court is wrong in deciding this issue as it does.

Rule 15(b) by its terms deals with "amendments to conform to the evidence." It states in part:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

To come within the purview of the Rule, an issue must have been tried "by express or implied consent of *the parties*," and it seems to me that Rule 15(b) must deal with the sort of amendments to the pleadings that have in fact been impliedly consented to by *parties already in the case,* who raised no objection when the factual matters that would support findings on such an issue were offered in evidence. It cannot, by definition, deal with a motion to *add* a party defendant, since that sort of an amendment could never have been "tried by express or implied consent *of the parties.*"

Even if the Rule could be construed to allow the addition of a party defendant, however, the Rule still requires a finding that the added party somehow consented to its addition through the conduct of the trial. The Court glosses over this problem by citing statements of *petitioners'* counsel at trial, and some other actions that occurred after trial, *ante,* at 469–471, but it is hard to see how these references bear on the *city's* consent. Given the differences in proof that might be involved in a suit against a city as opposed to a suit against an individual, the opportunity for prejudice is obvious, and I note that the Court reaches its conclusion based upon a trial record that is not nearly as clear as the Court would have one believe.

The Court's halfhearted and thoroughly unenlightening effort to bring this case within the ambit of Federal Rules would be unfortunate if confined only to the facts of this case, but I fear that it bids fair to spawn uncertainty and upset settled authority in an area with which we as a Court have virtually no experience, and on a point that for all intents and purposes was not even briefed.

Part II of the Court's opinion announces the novel proposition that in suing a public official under 42 U. S. C. § 1983, a money judgment against a public official "in his official capacity" is collectible against the public entity that employs the official. This startling doctrine—that a plaintiff may name as defendant only an agent, but nonetheless succeed in im-

posing damages on the principal who was not named—would seem to be at odds with the most rudimentary notions of pleading, parties, and of due process. It has long been the practice, of course, to sue a government official in his "official capacity" when seeking *injunctive* relief against a government entity. But I suspect that process arose in no small part from the fact that equity courts traditionally acted *in personam*, enforcing their decrees through the contempt power over the individual defendant. See H. McClintock, Equity § 34 (2d ed. 1948); W. Stafford, Handbook of Equity, ch. 6 (1934). Money damages suits are different; since the entity can be named as a defendant and its property proceeded against *in rem*, there is absolutely no need for the rule adopted by the Court today, and indeed, no cases of this Court can be cited in which money damages were awarded from a government treasury when the only defendant named was an individual sued "in his official capacity."

To support its result the Court relies upon its characterization of three of our recent opinions. Quoting footnote 55 from the opinion in *Monell* v. *New York City Dept. of Social Services,* 436 U. S. 658, 690 (1978), it concludes that "our opinion clearly equated the actions of the Director of the Department in his official capacity with the actions of the city itself." *Ante,* at 472. But to say that the "actions of the Director" are equated with the actions of the city itself falls far short of saying that an action naming only the Director as defendant can result in the judgment against the city itself.

The Court also relies on the opinion in *Hutto* v. *Finney,* 437 U. S. 678 (1978), because, we are told, "we considered it obvious that the State would pay the award because the defendants had been sued in their 'official capacities.'" *Ante,* at 472. The Court in *Hutto* said, at the page cited in the present opinion:

> "The order does not expressly direct the Department of Correction to pay the award, but since petitioners are sued in their official capacities, and since they are repre-

sented by the Attorney General, it is obvious that the award will be paid with state funds." 437 U. S., at 693.

Again, this observation is more readily interpreted as an estimate of what would probably happen in the particular case, than as a cryptic announcement of the novel doctrine for which the Court now says that it stands.

The third case upon which the Court relies is *Owen* v. *City of Independence*, 445 U. S. 622 (1980), which, as the Court points out, was a suit that named the municipal corporation as a defendant as well as the public officials. The statement of the Court in that case in footnote 18 that "[h]ere, in contrast, only the liability of the municipality itself is at issue" would seem a straightforward recognition of the fact that the city had been named as a defendant, not an announcement of the new rule of pleading for which the Court takes it today.

I think, therefore, that both "prongs" of the Court's decision are wrong. But right or wrong, they cannot both be applied to the same case. If in fact naming an official as a defendant "in his official capacity" is sufficient to impose liability upon a municipal corporation that was not named as a defendant, there is absolutely no need to amend the pleadings at this late date to add the city as a defendant. And if, at this late date, it is proper on the basis of this record to add the city as a defendant, petitioners have no need of the strained rule deduced from *Monell*, *Hutto*, and *Owen* that one need not name a defendant in a lawsuit in order to take judgment against that defendant.