**Mary L. DOSS, et al., Plaintiffs,**

v.

**James H. LONG, et al., Defendants.**

**Civ. A. No. C81–229R.**

United States District Court,
N.D. Georgia,
Rome Division.

Dec. 31, 1985.

See also, D.C., 629 F.Supp. 127.

Gloria Einstein, Ga. Legal Service, Waycross, Ga., David Webster, Emory Law School, Atlanta, Ga., Gary Leshaw, Decatur, Ga., John Riemer, Dalton, Ga., Robert Remar, Douglasville, Ga., William J. Cobb & John L. Cromartie, Jr., Atlanta, Ga., for plaintiffs.

Sam F. Little, Little & Adams, Dalton, Ga., John L. Tracy, Albany, Ga., Frank P. Samford, III, Moore, Samford & Moore, Atlanta, Ga., M.C. Pritchard, Waycross, Ga., Larry D. Woods, Nashville, Tenn., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on plaintiff's application for attorneys' fees and costs following the plaintiff's successful § 1983 action. In addition, plaintiff's seek to alter or amend this Court's judgment of August 23, 1985. Because the plaintiff's are the prevailing party in this matter, and because defendant's cannot show special circumstances that would justify a denial of fees, the Court will grant the request for fees. The Court will deny plaintiff's motion to alter its prior Order regarding notice because the Court finds its provision for notice to be reasonable. However, the Court will clarify its prior Order regarding notice as there seems to be a misunderstanding regarding the intent of its provisions.

## ATTORNEYS' FEES

Plaintiffs' application for attorneys' fees meets all the threshold requirements for an award of fees under 42 U.S.C. § 1988. Plaintiffs were successful in their challenge of the inferior court judges fee system of the State of Georgia under 42 U.S.C. § 1983. This Court's order of August 23, 1985, (Civil Action No. C81–229R, N.D.Ga.) declared that the fee system courts, as they existed prior to July 1, 1982, created an unconstitutional pecuniary interest on the part of the judges of such courts. The Court held that the judgments of those courts, rendered prior to July 1, 1982, were rendered in violation of due process of law. The Court restrained and enjoined any successor judges from making any effort whatsoever to collect or enforce those judgments. That judgment for the

plaintiffs places them in the prevailing party category and within the rule that "attorneys' fees be available in any action to enforce a provision of § 1983." *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 1982, 80 L.Ed.2d 565 (1984).

 The award of fees is discretionary with the court. But "the prevailing party should ordinarily recover an attorneys' fee unless special circumstances would render such an award unjust." *Criterion Club of Albany v. Board of Commissioners of Dougherty County,* 594 F.2d 118, 120 (5th Cir.1979). Furthermore, the discretion to deny attorneys' fees to a prevailing plaintiff under § 1988 is "exceedingly narrow." *Ellwest Stereo Theatre, Inc. v. Jackson,* 653 F.2d 954, 955 (5th Cir.1981) *see also, Fitzgerald v. Peek,* Civil Action No. C77–2074A (N.D.Ga., March 29, 1982), *per curiam affirmed,* 703 F.2d 581 (11th Cir. 1983).

The State of Georgia in their response in opposition, filed October 15, 1985, argues that the award of fees in these circumstances would be unjust. They assert that the State was never a party to the action. The Attorney General, who initially indicated a desire to file an *amicus* brief with this Court, later declined to do so. The State contends that they had no interest in the continuing litigation and that it was "litigated for 3 years after the statute was changed by State law primarily over the issue of the enforceability of the judgments entered under the previous fee system." The State notes that this effort may have been "motivated by the pecuniary interest which the named Defendants might have in collecting their fees," but insist that the State itself had no interest in, nor benefit by, the continued course of litigation, and that therefore they should not be taxed with any costs. The state asserts that should the Court find that the defendants who litigated the case did so in bad faith, those defendants should bear the costs individually. *Hutto v. Finney,* 437 U.S. 678, 700, 98 S.Ct. 2565, 2578, 57 L.Ed.2d 522 (1978)

However, the fact that the Attorney General did not ultimately choose to represent the state judicial officers is not dispositive of their claim. In *Fitzgerald v. Peek* Judge O'Kelley held:

> the State of Georgia cannot wash its hands of its liability for attorneys' fees under a federal statute by merely failing to provide the defendant with representation by the State Attorney General.

*Fitzgerald v. Peek,* Civil Action No. C77–2074A at 21, (N.D.Ga., March 29, 1982) *per curiam affirmed,* 703 F.2d 581 (11th Cir. 1983).

Since all the defendants were state officials, acting pursuant to the State Constitution and statutes, the defendants were as much the State as the Attorney General. As Judge O'Kelley noted in *Fitzgerald,* the premise that the State of Georgia's interests are not represented in the litigation unless the Attorney General's office represents it "[...] is unsound." *Id.* at 21.

> A recent 11th Circuit decision has held: It is well settled law that a section 1988 attorneys' fees award may run against a public treasury for section 1983 violations by public officers acting in their official capacities even though the public entity is not named as a defendant in the suit. [citations omitted].

*Odum v. Clark,* 748 F.2d 1538, 1542 (11th Cir.1984). In *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Supreme Court noted that the legislative history of section 1988 requires that:

> in such suits attorneys' fees should generally be obtained 'either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government *(whether or not the agency or government is a named party).'*

*Id.* at 700, 98 S.Ct. at 2578 (emphasis added). More recently the Supreme Court stated:

> [A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice

and an opportunity to respond. We now make that point explicitly.

*Brandon v. Holt,* —— U.S. ——, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985).

Certainly here the State received notice and an opportunity to respond. The State contends it responded by not getting into the case and by changing the law. However, those actions are not dispositive of the State's ultimate responsibility for the actions of its duly appointed officers, acting under color of its laws at the time the suit was commenced.

■ The State contests the amount the plaintiffs ask in fees, but it is necessary to first decide whether fees and costs are to be allowed at all. The Court is sympathetic with the State's position in this matter. The litigation continued for the past three years largely because of the efforts of a few of the judges involved.[1] However, sympathies are not statutes, and the Court cannot ignore the clear dictates of the statutory language and case precedent in the critical area of attorneys' fees in civil rights litigation. That language and precedent, as outlined above, clearly entitles plaintiffs to an award of attorneys' fees. The amount of fees awarded is in the discretion of the district judge, who must consider the factors outlined in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) before making an award. The Court has considered plaintiff's fee request in light of those factors and finds the amount requested appropriate. The Court will address the objections to the plaintiffs' request for attorneys' fees under the individual headings.

1. *The time and labor required.*

Lead counsel have attached affidavits indicating the number of hours spent on the case. They have not requested the total number of attorney hours spent on the case. Work done by other attorneys at Georgia Legal Services has not been included. Nor have they included the time spent on the case by law students or paralegals. Further, plaintiffs have reduced the time requested for administrative functions relating to the litigation, such as time spent coordinating meetings. The total number of hours requested are 136 hours for Gary Leshaw and 87 hours for David Webster. The Court disagrees with the defendant's assertion that the fee request is excessive. Defendants argue that because there was precedent on point in plaintiff's favor a minimum of effort should have been expended. In reviewing the lengthy docket of this matter the Court considers the efforts of the plaintiffs counsel to have been reasonable. Plaintiffs did not seek to maintain this litigation but were required to do so by the refusal of defendants to settle this matter in the face of the precedents they now call upon.

2. *Novelty and Difficulty of the Question.*

The litigation of a lawsuit calling into question a state-wide system of adjudication presented several difficult and involved problems. Plaintiffs had to deal with thousands of pages of documents, and the use and preparation of 198 interrogatories and 444 requests for production. There was a question of the propriety of handling this matter as a bilateral class action which the State now questions. The State does not suggest any more efficacious way by which plaintiffs could have proceeded, and the Court does not find this criticism harmful to plaintiffs request. Plaintiffs have competently and intelligently litigated this lengthy, complex matter.

3. *Requisite Skills.*

The Court has reviewed with care the work product of plaintiffs' counsel and concludes that they litigated this matter diligently and professionally.

4. *Preclusion of Other Employment.*

While not a particularly important factor in this instance, it is uncontestable that

---

1. Indeed, the defendants who maintained this litigation filed a response on September 24, 1985, asking that if fees are awarded in this litigation that they be awarded against the State and not themselves.

time spent on this litigation over the past four years was time that was unavailable to other eligible clients of Georgia Legal Services.

### 5. *The Customary Fee.*

Mr. Webster has requested an hourly rate of $125.00 for his work in this matter. Mr. Webster graduated from the University of Chicago law school in 1969. He clerked for Chief Judge John C. Godbold for one year before joining the Atlanta Legal Aid Society (ALAS). He remained with ALAS for six years, then worked in the regional office of the Legal Services Corporation from 1978 to 1980. In 1981 Mr. Webster became the Director of Impact Litigation for ALAS and this year joined the faculty of Emory Law School. Mr. Webster has litigated numerous civil rights cases in federal court, particularly in the area of procedural due process. Although the State has questioned the hourly fee requested by Mr. Webster it does not question his experience and skill in this area. The Court concludes that an hourly rate of $125.00 is commensurate with Mr. Webster's qualifications in these type of cases.

Mr. Leshaw has requested an hourly rate of $100.00 for his work in this matter. Mr. Leshaw graduated from Emory University School of Law in 1976, and received an LL.M. from that law school in 1980. From 1976 to the present time Mr. Leshaw has been employed at ALAS. In 1979 he became managing attorney of the DeKalb County office of ALAS and is now a senior attorney. Mr. Leshaw has litigated as lead counsel or co-counsel numerous cases involving significant constitutional claims. The State questions the hourly fee he requests, but does not question his experience and skill in this area. The Court concludes that an hourly rate of $100.00 is commensurate with Mr. Leshaw's qualifications in these type of cases.

### 6. *Fixed v. Contingent Fee.*

This factor has no bearing in this matter.

### 7. *Time Limitations Imposed by the Client or the Circumstances.*

Plaintiffs litigated this matter over a four year period without delay. The interests of plaintiffs clients that would otherwise go unrepresented mandated the dispatch with which plaintiffs conducted this litigation. The priority that it thus imposed entitles plaintiffs to a premium, reflected by the approval of their hourly rate requests.

### 8. *The Amount Involved and the Results Obtained.*

Plaintiffs sought declaratory and injunctive relief against the operation of the fee system for compensation of the class of judges. The relief obtained was precisely what the Plaintiff class requested.

### 9. *The Experience, Reputation and Ability of the Attorneys.*

The Court has discussed the skill of plaintiffs' counsel above. The Court has been impressed with the quality of their work product.

### 10. *The Undesirability of the Case.*

The time, cost and complexity of this far-reaching litigation would have made it unappealing or impossible for a private attorney. The State argues that the issues involved were not politically sensitive and points to the fact that the State's Attorney General was not actively defending the fee system and that the General Assembly voted to abolish the system within a year of the beginning of the litigation. However, in a matter in which attorneys question the validity of a branch of the state judiciary there often are political ramifications. Legal Services are at the mercy of political pressures. The diligence with which they represent the legal rights of the poor and underrepresented, when those rights come into conflict with the actions of the government, cannot be trivialized. The Court finds that the undesirability of this matter operates in support of plaintiffs request for fees.

11. *The Nature and Length of the Professional Relationship.*

This factor has no bearing in this matter.

12. *Awards in Similar Cases.*

The Court believes that the attorneys' fee award granted in this case is commensurate with the fee awards granted in similar cases.

In calculating the amount to be awarded the Court concludes that Mr. Webster is entitled to 87 hours at the rate of $125.00 per hour ($10,875). Mr. Leshaw is entitled to 136 hours at $100.00 per hour ($13,600).

## NOTICE

 Plaintiffs ask for relief under Fed. R.Civ.P. 60(b)(6) and renew their request for costs of implementing notice. Defendants basically rely on the statement in the Courts order of August 23, 1985, denying the cost of notice to plaintiff class, while requiring defendant's to bear the cost of notice to the defendant class.

The plaintiffs note that under section 1988, "Courts in this Circuit have long awarded expenses as part of the costs in civil rights litigation." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1188 (11th Cir. 1983). That court held that "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *Id.* at 1191–92.

The plaintiffs also ask for clarification of the Courts order in regard to notice. They ask whether the costs imposed on the defendant class for notice were to be born against defendants individually or in their official capacities. It is from the apparent foreclosure of the imposition of costs on the State of any notice that plaintiffs seek relief under Fed.R.Civ.P. 60(b)(6).

The Court will not alter its Order of August 23, 1985, regarding costs of notice, and plaintiff's Fed.R.Civ.P. 60(b)(6) motion is denied. However, it is apparent that there has been a misunderstanding concerning the intention of the Court's order. The Court finds that reasonable and appropriate notice in this matter consists of the mailing of this Court's order as to the unconstitutionality of the judgments of the fee-system courts to every named defendant, the posting of that order on the place of posting of public notices at the Courthouse doors, and notice to all persons now serving as the successors to the fee-paying court officials. The cost of this notice, as was the intent of this Court's prior order, shall be borne by the State. However, any additional notice that plaintiff may seek to effect shall be at their own cost, as the Court finds that the notice provided for herein is more than adequate.

ACCORDINGLY, the plaintiff's request for attorneys' fees is GRANTED in the amount of $24,475.00 to be paid by the State of Georgia. Plaintiff's request to modify, alter or amend the Court's order of August 23, 1985 is DENIED, consistent with the clarification of that order outlined above, that the cost of notice to the defendant class as described by the Court shall be borne by the State of Georgia.