803 F.2d 720
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAMES J. KUKLICA, Administrator of the Estte of Donna Louise
Shearer, Deceased, THE ESTATE OF DONNA LOUISE
SHEARER; CHRISTOPHER SHEARER and DORCAS
SHEARER, Co-Administrators,
Plaintiffs-Appellants
v.
CITY OF CLEVELAND; CLEVELAND POLICE DEPARTMENT; WILLIAM
HANTON, Chief of Cleveland Police, Defendants-Appellees.
 No. 84-3991.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1986.
 
 BEFORE: MERRITT and GUY, Circuit Judges, and BALLANTINE, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs' decedent, Donna Shearer, was arrested by the Cleveland police for an outstanding parole violation. Prior to arrest, Donna Shearer had ingested several Norpramin pills. Shortly after being booked and placed in a cell, Shearer was found suffering from an apparent drug-related seizure. She was taken to a nearby hospital where she died as a result of a drug overdose. This action was brought under 42 U.S.C. Sec. 1983 asserting that Shearer's constitutional rights were violated by defendants'[1] deliberate indifference to her serious medical needs. The jury returned a verdict in favor of defendants, and plaintiffs appeal, contesting the jury instructions with respect to deliberate indifference as well as the trial judge's exclusion of certain testimony. For the reasons that follow, we affirm the district court judgment.
 
 I.
 
 2
 Viewing the evidence presented at trial in the light most favorable to defendants,[2] the following factual backdrop emerges. At approximately 10:00 p.m. on the evening of May 8, 1982, Donna Shearer (Shearer) ingested 28 Norpramin tablets which were originally prescribed for her mother, Dorcas Shearer. When Dorcas discovered the missing pills, she notified the Central Medical Emergency Dispatch (CEMD) who informed her that they could not transport Shearer to a hospital against Shearer's will. CEMD did, however, notify the Cleveland Police Department and four officers were sent out to investigate. At this time, it was also discovered that Shearer was subject to an outstanding arrest warrant for alleged parole violations.
 
 
 3
 When the officers arrived at Dorcas' home, they were informed that Shearer was no longer there and that she had taken several of Dorcas' pills. While the officers were still at Dorcas' home, Rebbeca Biddle arrived and agreed to escort the officers to the home of Luella Goff, where she believed Shearer had gone. At the Goff residence, the officers found Shearer lying on a mattress, smoking a cigarette. She reacted to the officers by calling them swine and accusing Biddle of snitching on her. Officer Lowry, a licensed emergency medical technician, testified at trial that although it appeared as if Shearer had consumed one too many beers, she did not appear to be suffering from a drug overdose. Officer Parkinson asked Shearer if she had taken any pills and she said she had thrown up all of them. It was apparent to the officers that someone had recently vomitted in the bathroom. When asked if she wanted to go to the hospital, Shearer said she did not. She was then informed that she would have to go to jail, and as she was escorted to the squad car, she displayed no difficulty walking.
 
 
 4
 While Shearer was en route to the station, Dorcas telephoned the police station and spoke with the booking officer, Katherine Schlegel. Dorcas informed Schlegel that she believed that Shearer had consumed 28 of her Norpramin pills. Schlegel recorded this information and assured Dorcas that any necessary medical care would be provided.
 
 
 5
 Upon arrival at the station, Schlegel spoke with the arresting officers and was told that Shearer claimed to have thrown up any pills she had taken. Schlegel then personally examined Shearer and found nothing abnormal about her eyes, skin color, breathing, or speech. Shearer responded to the routine booking questions coherently and without difficulty.
 
 
 6
 Prior to booking Shearer, Schlegel consulted the officer in charge of the station, Sergeant Hoban. Hoban performed a rudimentary test of Shearer's physical coordination and found no immediate need for medical attention. In addition, Shearer told Hoban that she did not want to go to the hospital. Hoban instructed Schlegel to book Shearer and to keep an eye on her.
 
 
 7
 After booking was completed, Shearer was placed in a cell at 11:21 p.m. She was subsequently checked at 11:24 p.m. and 11:39 p.m. When Schlegel went to check her at 11:45 p.m., she found Shearer suffering from a seizure, and Shearer was immediately taken to a hospital where she died the next morning.
 
 
 8
 As revealed at trial, the policy of the police department is to provide medical attention to prisoners in its custody whenever the prisoner either requests or requires such attention. This policy is set forth in the police Manual of Rules and Regulations. All police officers are trained in general first aid and specifically to recognize certain symptoms of drug overdose, i.e., impaired alertness, constricted or dialated pupils, and abnormal skin color or breathing.
 
 
 9
 Dr. Adelson testified at trial that Norpramin takes one to two hours to enter the intestines and to be absorbed into the bloodstream. As a result of this delayed absorption rate, it is difficult to detect any effects of the drug shortly after its consumption. Therefore, after consuming the drug a person will look fine and feel fine until the time the drug is absorbed into the bloodstream.
 
 
 10
 All officers involved in the arrest and booking of Shearer testified that they acted in accord with police policy, and that since Shearer refused to go to the hospital and it did not physically appear to need medical attention, medical attention was not provided.
 
 II.
 
 11
 Plaintiffs' first argument on appeal is predicated upon the contention that the trial court instructed the jury that in order to find the City liable, they "must find that both the policy [of the City of Cleveland] and an individual police officer and members of the Cleveland Police Department were intentionally and deliberately indifferent" to Donna Shearer's Medical needs. Appellant's Brief at 16. This argument contains two components. The first regards the mental state necessary to support a finding of deliberate indifference. The second regards plaintiffs' contention that the instructions imposed a dual burden upon them to prove both that the policy was deliberately indifferent and that an individual police officer acted with deliberate indifference to Donna Shearer's medical needs. We will address both components separately.
 
 
 12
 Plaintiffs contend that the trial court erred in instructing the jury that in order to find the City liable they must find that a police officer was intentionally and deliberately indifferent to Shearer's medical needs. We find fault with this argument on several grounds. First, the instructions did not state that in order to find the City liable the jury must find that an officer was "intentionally" indifferent to Shearer's medical needs. The word "intentional" does not appear in the instructions.[3] Second, even if the instructions stated, as plaintiffs contend, that a finding of liability requires a finding that an officer was intentionally and deliberately indifferent to Shearer's medical needs, the instruction would not be in error when read in light of the entire jury instruction. To be deliberately indifferent to Shearer's medical needs, the officers must have been more than negligent or careless. In this sense, the words "deliberate" and "intentional" are synonymous.
 
 
 13
 Plaintiffs also argue that the instructions delivered by the trial court contradict this court's decision in Westlake v. Lucas, 537 F.2d 857 (6th Cir. 1976), where we held that a complaint alleging that prison authorities wrongfully denied medical treatment to a prisoner "need not allege that prison officials consciously sought to inflict pain on a prisoner by withholding treatment." Id. at 860. Plaintiffs contend that the trial court's instructions require that plaintiffs prove that the police officers consciously intended to inflict pain on Donna Shearer by withholding medical treatment from her. A reasonable reading of the instructions, however, reveal that they impose no such burden. Rather, they properly require plaintiff to prove only that the police officers' conduct was "deliberately indifferent" to Shearer's medical needs. There is a significant difference between consciously inflicting pain and being deliberately indifferent to medical needs. For an act or omission to be sufficiently harmful as to indicate deliberate indifference to serious medical needs, it must be more than negligent or careless, but, by the same token, a conscious effort to inflict pain or death is unnecessary. As the instructions indicate, the act must be done "in reckless or callous disreard or indifference to the rights of . . . the injured person." The trial court's instructions did not require plaintiffs to show that the police officers withheld treatment from Shearer with the specific intent to inflict pain or harm.
 
 
 14
 Plaintiffs argue further that the instructions improperly placed a dual burden on them to prove both that (1) the officers were deliberately indifferent to Donna Shearer's medical needs, and (2) that the police policy was deliberately indifferent to Shearer's medical needs. Appellants' Brief at 18. Again, plaintiffs misread the instructions. In order to find the City liable, the instructions clearly require plaintiffs to prove (1) that a police officer acted with deliberate indifference to plaintiff's medical needs, and (2) that a policy of the defendant City of Cleveland caused the officer to act in such a manner.
 
 
 15
 The genesis of the instructions delivered by the trial court is found in Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1977), where the Supreme Court held that a local government may not be sued under Sec. 1983 for injuries inflicted solely by its employees or agents. Instead, the government, as an entity, is only responsible under Sec. 1983 when an employee or agent acts in accord with an official policy or custom of the government. See also City of Oklahoma City v. Tuttle, 105 S. Ct. 2427, 2436 (1985) ("at the very least there must be an affirmative link between the policy and the particular constitutional violation alleged").
 
 
 16
 Here, the policy of the City was clearly established and there was ample testimony from which the jury could conclude that the individual police officers acted in accord with the policy with respect to Donna Shearer.[4] However, the jury failed to find the prerequisite constitutional violation; the officers were not deliberately indifferent to Shearer's medical needs.[5] Although plaintiffs do not directly raise the issue, we find that there is sufficient evidence in the record to support the jury's finding that the officers did not act with deliberate indifference towards Shearer's medical needs. Therefore, if none of the officers acted with deliberate indifference, the defendant City could not be held liable. See City of Los Angeles v. Heller, 106 S. Ct. 1571, 1573 (1986).
 
 III.
 
 17
 Plaintiffs' second claim of error is that the trial court erroneously excluded the testimony of several witnesses with respect to the following alleged facts:
 
 
 18
 1. Prior to the arrival of the police officers at the Goff residence, Shearer stated that she swallowed all of the pills and that she thought she was going to die, and
 
 
 19
 2. After the police officers arrived at the Goff residence and in the presence of the officers, Shearer stated that she would rather go to the hospital than to jail.
 
 
 20
 The two alleged statements are distinguishable in that the first relates to statements which Shearer allegedly made outside of the presence of the police officers, and the second relates to statements which Shearer allegedly made in the presence of the officers. We discuss them separately.
 
 
 21
 With respect to statements which Shearer allegedly made outside of the presence of the police officers and to the effect that she thought she was going to die from the pills, plaintiffs claim the statements, although hearsay, are admissible as evidence of Shearer's then existing mental, emotional, or physical condition. Fed. R. Evid. 803(3).[6] We need not decide, however, whether plaintiffs' analysis of this evidence as an exception to excludable hearsay is correct, since this proposed evidence was nonadmissible because irrelevant. The primary disputed issue in this case was whether the police officers acted with deliberate indifference toward Shearer's medical needs. To this extent, the focus of the evidence presented at trial was on what the officers knew or should have known about Shearer's medical needs. Shearer's statements relative to her emotional or physical condition prior to the arrival of the police officers was irrelevant to what the officers knew or should have known. This testimony was therefore properly excludable.
 
 
 22
 With respect to statements which Shearer allegedly made in the presence of the officers, the issue is more difficult. The parties again address this issue as a question of whether this alleged hearsay evidence is admissible as evidence of Shearer's then existing mental or physical condition. Fed. R. Evid. 803(3). We need not decide this hearsay exception question, however, because the testimony which plaintiffs attempted to present is not hearsay in the first instance. Plaintiffs sought to admit testimony indicating that Shearer stated, in the presence of the officers, that she would rather go to the hospital than the jail. It is axiomatic that the hearsay rule only excludes extrajudicial statements when they are offered to prove the truth of the matter asserted. Great Lakes Gas Transmission Co. v. Grayco Constructors, 506 F.2d 498, 503 (6th Cir. 1974), cert. denied, 420 U.S. 947 (1975). Here, the purpose of the proposed evidence was not to prove Shearer's subjective opinion as to where she wanted to go. For that purpose the evidence would have been irrelevant. Instead, it was offered to prove that the police officers had notice of the fact that plaintiff wanted to go to the hospital. Introduced for this purpose the evidence was not hearsay and, since the evidence was relevant to the officers' alleged deliberate indifference, it should have been admitted.
 
 
 23
 Despite the fact that the trial court erred in not admitting the testimony with respect to Shearer's statements while in the presence of the police officers, a new trial on this basis is not called for. since at the close of trial plaintiffs' case was solely against the City for its policy of providing medical care, had the evidence been admitted it would have been prejudicial to plaintiffs' case. Assuming the testimony was admitted and believed by the jury, it would have established that Shearer requested that she be taken to a hospital. The undisputed policy of the City of Cleveland is to provide medical attention when requested or when otherwise indicated. Thus, if Shearer had requested medical attention and the police officers had failed to provide it, the only possible inference would be that the officers failed to follow established City policy. Since an essential element for the City's liability was the causation of the police officers' deliberate indifference by the City's policy, this testimony would have negated liability on the part of the City. Therefore, plaintiffs were not prejudiced by the evidentiary error and a new trial is not in order. Fed. R. Civ. P. 61; 28 U.S.C. Sec. 2111; McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554 (1984).
 
 
 24
 The decision of the district court is AFFIRMED.
 
 
 
 *
 Honorable Thomas A. Ballantine, Jr., United States District Court, Western District of Kentucky, sitting by designation
 
 
 [1]
 When this action was originally commenced, the complaint named as defendants the City of Cleveland, the City's Chief of Police, and two individual police officers who participated in the events which preceded Shearer's death. During the course of the trial, for strategic reasons, plaintiffs' counsel stipulated to dismissing the claims against the individual police officers. In addition, plaintiffs' counsel further stipulated to the dismissal of any claim against the Chief of Police in his individual capacity. Therefore, at the close of the trial, the sole defendants were the City and its Chief of Police in his official capacity. Since a claim against the Chief of Police "in his official capacity" is tantamount to a claim against the City itself, see Brandon v. Holt, 105 S. Ct. 873, 878 (1985), retaining the Chief of Police as a defendant added nothing to plaintiffs' case. The case was, therefore, essentially against the City for its policy with respect to providing medical treatment to its prisoners
 
 
 [2]
 Rogers v. Mascari, 455 F.2d 963, 964-65 (6th Cir. 1972)
 
 
 [3]
 The actual instruction given by the court in pertinent part stated:
 In order for the estate of Donna Shearer to prove its claim under Section 1983, the burden is upon it to establish, by a preponderance of the evidence, each of the following elements:
 
 
 [1]
 That members of the Cleveland Police Department were deliberately indifferent to the known and serious medical needs of Donna Shearer
 
 
 [2]
 That the Defendants acted under color of law
 
 
 [3]
 That the policy of the City caused the police officers to act in a manner which constituted deliberate indifference
 
 
 [4]
 That the deliberate indifference of the police officers was the proximate or legal cause of the death of Donna Shearer
 With respect to "deliberate indifference," the court instructed:
 Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain. An act or failure to act is wantonly done if it is done in reckless or callous disregard of or indifference to the rights of one or more persons, including the injured person. Deliberate indifference may occur through the manner in which prison doctors respond to prisoner's needs, by prison guards intentionally denying or delaying access to medical care, or by intentionally interfering with medical tratment which has been prescribed.
 A showing that a police officer may have been careless or failed to use best judgment is insufficient to establish liability for deliberate indifference.
 
 
 [4]
 In addition, we note that on its face the policy in this case passes constitutional muster
 
 
 [5]
 Along with its general verdict, the jury submitted an accompanying note which stated: "The jury believes that the Police Officers failed to use good judgment and first aid procedures but did not show deliberate indifference and therefore rule in favor of defendants."
 
 
 [6]
 Federal Rule of Evidence 803(3) excepts from the general hearsay rule:
 (3) Then existing mental, emotional or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.