**Timothy H. JOHNSON, Plaintiff,**

v.

**Reno Police Chief, BRADSHAW, et al., Defendants.**

**No. CV–N–88–18–ECR.**

United States District Court, D. Nevada.

March 27, 1991.

Timothy Johnson, pro se.

Randall K. Edwards, Asst. City Atty., Reno, Nev., for defendants Magee, Montague and Bradshaw.

Gregory R. Shannon, Deputy Dist. Atty., Reno, Nev., for defendants Lane & Field–Lang and Washoe County.

Thomas A. Collins, Reno, Nev., for defendant Caselli.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

In our Minute Order (document # 16) filed on December 22, 1988, this Court referred this case to the Magistrate for all further pretrial proceedings. Currently under submission to this Court is the Magistrate's Report and Recommendation (document # 75) regarding the Motion to Dismiss (document # 47) by defendant Lane, the Motion for Summary Judgment (document # 53) by defendants Bradshaw, Montagne, and Magee, and the Cross-Motion for Partial Summary Judgment (document # 62) by plaintiff.

Plaintiff has filed objections (document # 77) to the Magistrate's Report and Recommendation, to which defendant Lane (document # 79) and defendants Bradshaw, Montagne, and Magee (document # 82) have responded. Plaintiff then filed a reply (document # 86).

## I. DEFENDANT MONTAGNE

The Magistrate recommended that Defendants' Motion for Summary Judgment be denied as to defendant Montagne, because there are genuine issues of material fact relevant to the determination of probable cause for the search and seizure of plaintiff's car. No one objected to this recommendation. Given the two completely different versions of what occurred, only one of which would provide probable cause, the Magistrate's analysis is correct, and we therefore adopt her analysis and conclusion as to this defendant.

## II. DEFENDANT LANE

Similarly, plaintiff does not specify any objection to the Magistrate's recommendation as to defendant Lane, which merely adopts the reasoning of this Court's Order (document # 33) dated August 3, 1989, for the conclusion that plaintiff has failed to state a claim against defendant Lane. Therefore, as this analysis also appears correct, this Court will adopt the Magistrate's conclusion that defendant Lane's Motion to Dismiss should be granted.

## III. DEFENDANTS BRADSHAW AND MAGEE

■ There appears to be some confusion as to whether plaintiff is suing defendants Bradshaw and Magee in their official capacities, or in their individual capacities. The Magistrate's conclusions, and defendants' arguments for qualified immunity seem chiefly addressed to the suits against defendants Bradshaw and Magee in their individual capacities. Indeed, qualified immunity is only available to defendants in their individual capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985).

Plaintiff's Amended Complaint (document # 25) is apparently directed at defendants Bradshaw and Magee in both their individual and official capacities. However, plaintiff has apparently chosen to pursue his suit against these defendants only in their official capacities. *See, e.g.*, Plaintiff's Response to Motion for Summary Judgment (document # 62), at 14 ("Reno Police Cheif, [sic] Bradshaw, is not personally liable for the deprivation, but the City of Reno is . . . ."), 16 ("Plaintiff has stated a proper claim against Defendant, Magee, in his official capacity . . ."; plaintiff does not address individual capacity). This conclusion is further supported by plaintiff's objections (document # 77) to the Magistrate's report, which only argue for these defendants' liability in their official capacity.

Therefore, this Court need only discuss the suits against these defendants in their official capacities. Furthermore, as plaintiff has objected to the Magistrate's Report and Recommendation as to both of these defendants in their official capacities, this Court must make a *de novo* determination. 28 U.S.C. § 636(b)(1).

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . ." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); *see*

*also Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Therefore, these official capacity suits will succeed only if the city itself is liable. Moreover, since these official capacity suits are in fact directed at the city, this Court need not discuss the official capacity suits against defendant Bradshaw and defendant Magee separately.

■ However, the city may not be held liable merely on the basis of respondeat superior. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. Rather, it can only be held liable for the execution of its policies or customs. *Id.* at 694, 98 S.Ct. at 2037. These policies or customs must be made "by those whose edicts or acts may fairly be said to represent official policy." Police Chief Bradshaw's edicts and acts clearly represent the official policy of the Reno Police Department, and therefore the city. The property and evidence control policy at issue here is clearly marked "Originated By" and "Approved By" defendant Bradshaw. Defendants' Motion for Summary Judgment (document # 53) Exhibit B, at 1.

■ The city is liable under § 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *see also City of Oklahoma City v. Tuttle,* 471 U.S. 808, 817, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985). Thus, the plaintiff must show (1) the policy caused the deprivation, and (2) the deprivation was unconstitutional.

#### A. *Itemization.*

■ The first policy plaintiff complains of is the itemization procedures of the Reno Police Department. Plaintiff alleges that these procedures resulted in the disappearance of some of his personal belongings contained in his car at the time of its seizure. However, it appears to this Court that the police did itemize the belonging in plaintiff's car. *See* Affidavit of Melissa Montagne–Partyka, Defendants' Motion for Summary Judgment, Exhibit A, at 3; Amended Complaint, Exhibit B. Plaintiff's complaint apparently alleges "a Policy and Procedure for not requiring the Police to ITEMIZE *ALL* ITEMS IN THE POLICES [sic] DIRECT CONTROL." Thus, plaintiff argues that there is a policy of incomplete itemization.

We view plaintiff's claim of a "policy" of incomplete itemization as analogous to the "policy" of inadequate training addressed by the Supreme Court in *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The plurality said in *Tuttle,* "[I]t is therefore difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate." *Tuttle,* 471 U.S. at 823, 105 S.Ct. at 2436. This applies also to plaintiff's alleged "policy" of incomplete itemization—it is hard to imagine the police department consciously adopting a policy of incompletely itemizing the contents of a car.

Furthermore, plaintiff has presented no evidence that the police department adopted this policy, other than this one instance where they allegedly failed to itemize all of his belongings contained in his car. As the plurality said in *Tuttle,* "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle,* 471 U.S. at 823–24, 105 S.Ct. at 2436. Plaintiff has presented no evidence that this "policy" of incomplete itemization can be attributed to any municipal policymaker. This evidence of causation between the municipal policy and the constitutional deprivation is essential to provide "the fault-based analysis for imposing municipal liability." *Id.* at 818, 105 S.Ct. at 2433 (footnotes omitted). Therefore, defendants' motion for summary judgment should be granted as to the incomplete itemization claim.

### B. *Lack of Notice.*

■ Plaintiff also alleges that the police department has a policy of failing to notify the owner of a vehicle when releasing his or her property. Unlike the lack of evidence of a "policy" of itemizing incompletely, plaintiff has presented uncontroverted evidence that the police department's policy is not to notify. In addition to plaintiff's uncontroverted allegation that the police department did not notify him when it released his car to the towing company, we also have evidence of the written policies of the police department, which do not provide for notice to the owner. Furthermore, these policies were adopted by a policymaker of the city, its police chief, defendant Bradshaw. Finally, we have the argument of defendants' own counsel that their policy "put[s] the responsibility of ascertaining the disposition of property seized on the owner of the property." Defendants' Motion for Summary Judgment, at 14. Put simply, the policy is not to provide notice.

Therefore, plaintiff has demonstrated a policy not to provide notice that was enacted "by those whose edicts or acts may fairly be said to represent official policy...." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

#### 1. Policy Caused Deprivation.

■ We must reject the Magistrate's conclusion, "Plaintiff's property was not deprived at the point it was released to the tow company; the deprivation occurred when the tow company sold it." Plaintiff clearly was deprived of his property when, without notice to him, it was given by the police department to a third party. When the deprivation of property occurred, plaintiff's due process rights were implicated.

Furthermore, if plaintiff had a constitutional right to notice under the due process clause, the police department's policy of releasing cars without notice clearly caused a deprivation of this constitutional right.

#### 2. Lack of Notice is Unconstitutional.

■ The only remaining question is the constitutionality of the police department's policy of failing to notify. "Loss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause." *Stypmann v. City and Cty. of San Francisco,* 557 F.2d 1338, 1342 (9th Cir.1977) (footnote omitted). The release of plaintiff's car without notice deprived him not only of its use, but eventually of all of his interest in the car.

According to the Supreme Court,

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The Ninth Circuit has described the private interest in the uninterrupted use of an automobile as substantial. *Stypmann,* 557 F.2d at 1342. Plaintiff does not dispute the police department's ability to impound the car as evidence. However, if the police department fails to notify the owner when the impounded car is released, it is quite likely that the owner will be deprived of the use of his car for far longer than necessary. Thus, the risk of erroneous deprivation of this substantial private interest is great. Furthermore, notice would clearly reduce this risk substantially. Finally, the burden on the police department in providing notice would be relatively slight. As cars must be registered, it is easy to determine the owner and the owner's address. Therefore, we conclude that due process requires notice to the owners before releasing impounded vehicles.

Although there are no prior decisions directly on point, this conclusion finds support in case law. The Ninth Circuit has held that the owner of a towed vehicle has a due process right to a prompt post-towing hearing. *Stypmann,* 557 F.2d at 1344.

Providing notice is less of a burden to the police than providing a hearing, yet releasing a car involves a greater risk of permanent deprivation than towing it. Thus, if a hearing is required after towing, *a fortiori* notice should be required before releasing a car.

Another circuit found a due process violation on facts similar to the instant case. Where a driver was arrested, and the car impounded, the Tenth Circuit held that the police were required to give notice, not only to the registered owner, but also to the arrested driver, before selling the car at an auction. *McKee v. Heggy,* 703 F.2d 479 (10th Cir.1983).

Thus, the police department's policy of failing to notify owners before releasing their vehicles is unconstitutional. This policy caused the deprivation of plaintiff's constitutional right not to be deprived of his property without due process. Furthermore, there are no genuine issues of material fact relevant to this claim. Therefore, plaintiff is entitled to summary judgment as to the police department's liability on this claim.

IT IS, THEREFORE, HEREBY ORDERED that Defendant Lane's Motion to Dismiss (document # 47) is GRANTED.

IT IS FURTHER ORDERED that Defendants Bradshaw, Montagne, and Magee's Motion for Summary Judgment (document # 53) is DENIED as to defendant Montagne, and DENIED as to the suits against defendants Bradshaw and Magee in their official capacities.

IT IS FURTHER ORDERED that plaintiff's Cross-Motion for Summary Judgment is GRANTED as to defendant Bradshaw's and defendant Magee's liability in their official capacities for failing to provide notice before releasing plaintiff's car, but DENIED as to all other issues.