W.W. TAYLOR and Southwest Mortgage
Service Corporation, Plaintiffs,

v.

FEDERAL HOME LOAN BANK
BOARD, et al., Defendants.

Civ. A. No. CA 3–84–0578–G.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 19, 1986.

See also 661 F.Supp. 1341.

Stafford Hutchinson, Asst. U.S. Atty., Dallas, Tex., for William Churchill, Leonard McManaman, William Capshaw, Gary Adams, Dorothy Nichols and Rosemary Stewart.

James C. Todd, Asst. Atty. Gen., Mary F. Keller, J.P. Wise, Jim Mattox, Austin, Tex., for Earl Hall and LL Bowman.

Corbet F. Bryant, Jr., Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for Michael F. Pezzulli.

Wm. B. Kirley, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., for FSLIC.

James T. Lantelme, Washington, D.C., for FHLBB and FSLIC.

Frederick W. Shipman, Dallas, Tex., and Nemuel E. Pettie, Dallas, Tex., for plaintiffs.

### MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the motion for summary judgment of defendants L.L. Bowman III ("Bowman") and H. Earl Hall, Jr. ("Hall"), which seeks dismissal of the claims against them in both their official and individual capacities. Those claims allege that Bowman and Hall were part of a conspiracy, involving several state, feder-

al, and private defendants, to injure plaintiffs' business and reputation and to deprive them of their civil rights.[1]

## I. *Plaintiffs' Allegations*

The allegations directly related to the liability of Bowman and Hall are set forth in paragraphs 35–40 of the complaint filed April 16, 1984. Those allegations are summarized below.

Four unnamed examiners, acting under the direction of Hall and Bowman and in conspiracy with all other defendants, conducted an examination of the business and lending practices of Hi-Plains Savings and Loan Association of Hereford, Texas ("Hi-Plains"). The examiners issued an erroneous report criticizing: (1) Hi-Plains' consulting agreement with plaintiffs; (2) the loan and line of credit extended to plaintiff Southwest Mortgage Corp.; and (3) the collateral securing the loan, because the time share contracts collateralizing the loan were not adequately insured against fraud or misrepresentation. The examiners "knowingly and recklessly made this erroneous report and ... such act constitutes a violation of Texas Statute 11.18 [apparently Art. 852a, § 11.18, TEX.REV.CIV.STAT. ANN. (Vernon Supp.1986) ]" (complaint, paragraph 35).

Hall, in furtherance of the conspiracy, called Great Plains Insurance Company ("Great Plains"), one of plaintiffs' insurance carriers, and asked if Great Plains wrote insurance in Texas. Upon being informed that Great Plains did not issue insurance in Texas, Hall circulated "false memos" to other Texas savings and loans telling them that plaintiffs' paper was not insured and that they "should be on the look out for it." Specifically, Hall told officials at First Savings Association of Burke Burnett (sic), Texas that if they bought any of plaintiffs' paper, he would issue a cease and desist order against them and close their doors the next day. Hall then called Great Plains and told them not to issue any more policies where a Texas savings and loan would be a beneficiary. Hall's acts were intended to damage or destroy plaintiffs' insurance program and put plaintiffs out of business (complaint, paragraph 36).

Hall, Bowman, and the examiners conspired to issue a cease and desist order to Hi-Plains prohibiting acceptance of any more time share contracts as collateral for the loan to Southwest. Both Taylor and Hi-Plains appealed the cease and desist order, which also prohibited Taylor and Hi-Plains from continuing with the consulting agreement (complaint, paragraph 37).

Bowman and Hall, in cooperation with the Federal Home Loan Bank Board and its employees, violated "Texas Statute 11.18" by providing information about Hi-Plains to T.L. Welker ("Welker"). The information provided to Welker was secret and confidential. Welker purchased the stock of Hi-Plains and took control. At Welker's instance, the appeal of the cease and desist order was dismissed. Plaintiffs were not consulted and did not consent to the dismissal of the appeal, so that they were denied due process (complaint, paragraph 38).

Prior to issuance of the cease and desist order by Texas authorities, Taylor reached an agreement with Bowman which would give Hi-Plains until June 30, 1983 to avoid receivership by showing a positive net worth of $750,000. Nonetheless, on February 7, 1983, Bowman and Hall issued the cease and desist order, contrary to the agreement, at the instance of some of the federal defendants. The purpose of the cease and desist order was to allow Welker to take control of Hi-Plains and to damage plaintiffs' business reputation (complaint, paragraph 39).

Welker took control of Hi-Plains and unilaterally declared the consulting agreement and the line of credit void. Welker hired an attorney (also named as a defendant in this suit) and sued plaintiffs in federal court in Amarillo, Texas. Welker also tortiously attempted to obtain cancellation of plaintiffs' fraud and forgery bond and cred-

---

**1.** The federal defendants have also filed motions seeking dismissal of plaintiffs' claims. Those motions are the subject of a separate memorandum order.

it default insurance (complaint, paragraph 40).[2]

## II. *Defendants' Contentions*

Defendants contend, and the summary judgment evidence discloses, the following facts: Bowman and Hall are officials of the State of Texas. Specifically, they are the Commissioner and Deputy Commissioner, respectively, of the Texas Savings and Loan Department. As Commissioner, Bowman had final authority with respect to issuance of the cease and desist order of which plaintiffs complain. All of the actions of Bowman and Hall which are material to this case were taken in the course of their official duties.

The actions of defendants Bowman and Hall were taken in good faith and were objectively reasonable in light of the law clearly established at the time. In good faith, Bowman and Hall reasonably believed that the financial transactions between Hi-Plains and plaintiffs constituted unsafe and unsound practices within the meaning of applicable state law. Specifically, Bowman and Hall concluded in good faith that they had sufficient cause to believe that the "time share" notes conveyed by plaintiffs to Hi-Plains, apparently as part of a multi-million dollar transaction, were not adequately insured against default and did not represent a foreclosable lien on real estate.

Acting in good faith, Hall reacted negatively when asked for his opinion by the president of another savings and loan association who had expressed some interest in a transaction with plaintiffs comparable to that undertaken by Hi-Plains.

Bowman, acting in good faith, issued a cease and desist order on February 7, 1983 against Hi-Plains, pursuant to his authority and responsibility under state law. Hi-Plains appealed the cease and desist order. At the hearing of that appeal on March 23, 1983, plaintiffs, through their attorney, were permitted to participate as interested parties. On April 18, 1983, Hi-Plains entered into an agreed cease and desist order with Bowman. On the basis of the agreed order, Bowman concluded, in good faith, that the Hi-Plains appeal was moot. Accordingly, the appeal was dismissed without notice to plaintiffs. Bowman and Hall never provided any information to Welker which was confidential under state law.

On May 4, 1983, acting pursuant to its authority and responsibility under federal law, 12 U.S.C. § 1730, the Federal Home Loan Bank ("Bank Board") issued an order prohibiting Taylor from participating in the affairs of Hi-Plains without prior approval of the Federal Savings and Loan Insurance Corporation. After failing to obtain either a temporary restraining order from Judge Buchmeyer to enjoin enforcement of the Bank Board order or an order of mandamus from the Fifth Circuit, plaintiffs entered into a stipulated agreement on July 28, 1983, prohibiting Taylor's involvement in the affairs of Hi-Plains. On October 28, 1983 Taylor's suit, challenging the Bank Board's order, was dismissed with prejudice by Judge Buchmeyer.

## III. *Analysis*

### A. *Official Capacity/Eleventh Amendment*

■ When a government official is sued in his official capacity, the practical effect is that the judgment rendered may be enforced against the entity the official represents. *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). The Eleventh Amendment, however, bars a suit against state officials for retroactive relief or money damages which would be paid from state coffers. Accordingly, a state official cannot be sued for money damages in his official capacity since to do so would violate the state's Eleventh Amendment immunity. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662

---

2. The complaint contains 80 paragraphs covering 35 pages. In other parts of the complaint, plaintiffs refer to a conspiracy perpetrated by the "defendants." Apparently, they believe that the events recited in the complaint are all part of one large conspiracy involving cooperation by two states, the federal government, and many individuals. *See, e.g.,* ¶¶ 55, 57, 62, 63, 64, and 66 of the complaint. Because the plaintiffs have failed to provide support for their theory that all of the alleged acts are part of one large conspiracy, however, the focus in this opinion will be upon the allegations specifically naming defendants Bowman and Hall.

(1974). Plaintiffs have not shown or even argued that the State of Texas has consented to be sued or that it has waived its Eleventh Amendment immunity.

■ Because of the Eleventh Amendment sovereign immunity, the court also lacks pendent jurisdiction to hear plaintiffs state law claims. Throughout their complaint, plaintiffs accuse Bowman and Hall not only of violating their rights under "Texas Statute 11.18" (complaint, paragraphs 35–38), but also under the common law of Texas for libel, slander, defamation, damage to reputation,[3] and tortious interference with business contracts.

■ The Eleventh Amendment prevents the assertion of jurisdiction over State officials for claims arising under state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). Because Bowman and Hall cannot be sued for money damages in federal court in their official capacities, they are entitled to dismissal of all claims asserted against them in their official capacities.

### B. *Civil Rights Claims/Individual Capacity*

■ Plaintiffs' remaining claims seek recovery from Bowman and Hall individually, for violation of plaintiffs' civil rights. The court concludes that Bowman and Hall are shielded from liability by qualified good faith immunity.

■ The Supreme Court has encouraged the lower courts to quickly dispose of unsupported and unsupportable claims against public officials by resort to summary judgment on good faith immunity grounds. In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court reaffirmed its expectation that the qualified immunity defense "would permit 'insubstantial lawsuits to be quickly terminated.'" *Id.* at 814, 102 S.Ct. at 2736, *citing Butz v. Economou*,

438 U.S. 478, 507–508, 98 S.Ct. 2894, 2911–2912, 57 L.Ed.2d 895 (1978) and *Scheuer v. Rhodes*, 416 U.S. 232, 245–248, 94 S.Ct. 1683, 1691–1692, 40 L.Ed.2d 90 (1974). The court recognized in *Scheuer* that damage suits alleging constitutional violations need not proceed to trial but can frequently be terminated on a properly supported motion for summary judgment based on the defense of immunity. *Butz*, 438 U.S. at 507, 98 S.Ct. at 2911. Until the threshold immunity question is resolved, discovery should not be allowed. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

■ To prevail against a claim of qualified immunity, the plaintiffs must show that defendants' conduct violated clearly established constitutional rights of which a reasonable person would have known. *Id.* "Clearly established" rights are those "basic, unquestioned constitutional rights" which are grounded in "settled, indisputable law." *Wood v. Strickland*, 420 U.S. 308, 321–322, 95 S.Ct. 992, 1000–1001, 43 L.Ed.2d 214 (1975).

■ Under this test, the plaintiffs have failed to show any act or omission of defendants which was, at the time, known to be constitutionally proscribed so that Hall and Bowman can be held accountable for it under section 1983. In order to maintain a claim under section 1983, one must allege the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the statute of a violation of the Constitution. *Love v. King*, 784 F.2d 708, 712 (5th Cir.1986).

■ Since section 1983 is designed to redress abuses of government power, it naturally follows that a government official can defend against the claim by showing that his actions were not an abuse of power. Mere negligence in the exercise of government power is not actionable under section 1983. *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986); *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 665 88 L.Ed.2d 662 (1986).

---

**3.** Plaintiffs' allegations of libel, slander, defamation, and for damage to reputation, even if assumed to be true for purposes of this motion, fail to state a claim for relief under section 1983. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Cook v. Brockway*, 424 F.Supp. 1046, 1053 (N.D.Tex.) *aff'd,* 559 F.2d 1214 (5th Cir.1977).

In *Harlow,* the court announced an objective reasonableness test to determine whether there had been an actionable abuse of power. It articulated that test as follows:

> [T]he objective reasonableness of an official's conduct [is] measured by reference to clearly established law,.... [i.e.] law [that] was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Plaintiffs have failed to direct this court to any law that was so clearly established that reasonable officials in the position of Bowman and Hall would have known they were violating plaintiffs' rights by engaging in the conduct attributed to them.

▮ Some of the acts complained of, if proved, might constitute violations of state law, but they do not rise to the level of violations of well-settled constitutional law. Plaintiffs' allegations charge defendants with violations of Sections 11.11 and 11.18 of the Texas Statutes (apparently TEX. REV.CIV.STAT.ANN. art. 852a), as well as state common law offenses. Even if defendants are assumed to have violated state law, however, that will not suffice to deprive them of their good faith immunity under § 1983.

In *Davis v. Sherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the Supreme Court held that defendants' violation of state law procedures for employee termination did not strip them of their good faith immunity against plaintiffs' claims under § 1983 for deprivation of property without due process. In refusing to find that violation of state law defeated a claim of good faith immunity, the Court stated:

> Nor is it always fair, or sound policy, to demand official compliance with statute and regulation on pain of money damages. [Public] officials ... routinely make close decisions in the exercise of the broad authority that necessarily is

delegated to them. These officials are subject to a plethora of rules, "often so voluminous, ambiguous, and contradictory, and in such flux that officials can comply with them only selectively."

*Id.,* 104 S.Ct. at 3021 (citation omitted). The Court further commented in a footnote that under the plaintiff's theory:

> Officials would be required not only to know the applicable regulations, but also to understand the intent with which each regulation was adopted. Such an understanding often eludes even trained lawyers with full access to the relevant legislative or administrative materials. It is unfair and impracticable to require such an understanding of public officials generally.

*Id.* n. 13.

▮ Bowman and Hall reasonably relied upon the reports of their examiners in deciding to issue the cease and desist order. They can have no vicarious liability for any "erroneous reports," if there was error on the part of their subordinates. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691–695, 98 S.Ct. 2018, 2036–2038, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 375–376, 96 S.Ct. 598, 606–607, 46 L.Ed.2d 561 (1976).

### C. *Procedural Due Process*

Plaintiffs allege *inter alia* that they did not receive fair treatment from the Texas Savings and Loan Commissioner because Bowman's issuance of the cease and desist order violated a verbal agreement whereby plaintiffs were given until June 30, 1983 to complete certain transactions with Hi-Plains. The plaintiffs also allege that dismissal of their appeal of the cease and desist order, without notice to them or an opportunity to be heard, violated their rights to procedural due process. Consideration of these claims is barred by the Supreme Court's holdings in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and their progeny.

In *Parratt,* a prisoner claimed that he had been deprived of his property "without

due process of law." The Supreme Court rejected plaintiff's claim under § 1983. The Court reasoned that it was not practicable for the state to provide a hearing before a random and unauthorized deprivation of property by a state employee, since the state could not tell when such deprivations might occur. It therefore determined that a post deprivation tort remedy provided by state law satisfied due process. *Parratt,* 451 U.S. at 541–544, 101 S.Ct. at 1916–1917. The Court emphasized that there was no allegation that the deprivation of property resulted from constitutionally inadequate state procedures. *Id.* at 543, 101 S.Ct. at 1916–1917.

In *Hudson,* the *Parratt* rule was extended to a situation where the alleged deprivation of property was intentional rather than negligent. The court reasoned that unauthorized intentional wrongs are no more predictable, and perhaps less so, than negligent behavior. 468 U.S. at 531–537, 104 S.Ct. at 3203–05.

■ Assuming plaintiffs' allegations are true, their cause of action under § 1983 for violation of due process is barred by the *Parratt/Hudson* rule. The alleged conspiracy to deprive plaintiffs of their property constitutes a random and unauthorized act by a state employee. The plaintiffs have adequate avenues under state law to challenge defendants' conduct. Even assuming plaintiffs have been illegally deprived of their property, they were not deprived of due process. Plaintiffs do not contend, nor can they, that the deprivation in this case occurred pursuant to an established state procedure. Furthermore, plaintiffs have not contended that defendants' actions deprived plaintiffs of a substantive rather than a procedural right. *See Holloway v. Walker,* 784 F.2d 1287, 1291–1294 (5th Cir.1986).

■ Even assuming that the events of February 7 to April 18, 1983 constituted a deprivation of property without due process, however, the alleged acts did not result in any injury, and plaintiffs are collaterally estopped from contesting the cease and desist order. On May 4, 1983 the Bank Board enjoined plaintiffs from doing business with Hi-Plains. Plaintiffs challenged the Bank Board order in federal court, were denied relief, and then voluntarily acquiesced in the restriction on July 28, 1983, after which their suit was dismissed with prejudice on October 28, 1983. The validity of the Bank Board action has been established and, as a matter of *res judicata* and/or collateral estoppel, cannot be relitigated here. Even if plaintiffs had been allowed to prosecute an appeal, and even if such an appeal had resulted in reversal of the cease and desist order, plaintiffs still could not have conducted business without FSLIC approval, which was never given.

### D. *Pleading Deficiencies/Section 1983*

■ To maintain a claim under § 1983 against state officials for damages, plaintiffs must be able to plead, prior to discovery, specific facts which overcome the officials' qualified immunity by identifying, with particularity, behavior expressly proscribed, at the time of the conduct, by well settled, clearly established constitutional law. *Elliott v. Perez,* 751 F.2d 1472, 1473, 1476–1479, 1482 (5th Cir.1985). Plaintiffs complain that without being allowed to conduct discovery, they are unable to adequately support their claims. In *Elliott,* the Fifth Circuit stressed that plaintiffs suing public officials for damages should not be permitted to plead broad allegations and then rely upon depositions and other discovery to obtain the facts they need to state their case. *Id.* at 1476, 1478, 1479.

In this case the 36 page, 80 paragraph complaint, while not lacking in bulk, does lack sufficient factual allegations to state a claim under § 1983 and overcome the qualified immunity of Bowman and Hall. Taylor's deposition shows that he had insufficient facts prior to discovery to allow him to state a claim under § 1983. As to each of the paragraphs in the complaint which relate to Hall and Bowman, Taylor admits he has no more than superficial factual support which is inadequate to state a claim under *Elliott.* Plaintiffs have been given ample time to amend. In *Pringle v. Bournias,* CA 3-84-0693-G (N.D.Tex. Feb-

ruary 27, 1985), another lawsuit brought by Taylor and Southwest, this court noted:

> Although the Fifth Circuit in *Elliot* apparently instructed the trial court to allow the plaintiffs leave to amend their complaint, the plaintiffs in this case have had ample opportunity to set forth in specificity all material facts which would negate the applicability of the immunity defense. The court has considered the plaintiffs' complaint, plaintiffs' response to this motion, and plaintiffs' lengthy statement of the nature of its case set forth in the status report filed with the court on January 8, 1985. On the basis of these pleadings, as well as defendants' motion and brief, the court concludes that plaintiffs have set forth all the relevant facts pertaining to the immunity defense, and have, nevertheless, failed to negate the applicability of that defense.

*Id.* at 4. This case has been pending for over two years. Plaintiffs have failed to state a claim under § 1983, despite ample time to amend.

### E. *Claims Under Sections 1981 and 1985*

Plaintiffs assert claims under §§ 1981 and 1985. The court concludes that the claims asserted under §§ 1981 and 1985 must be dismissed, pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim.

#### 1. *Section 1981*

█ To state a claim under § 1981, it is well-settled that a plaintiff must allege discrimination based on race. *Olivares v. Martin,* 555 F.2d 1192, 1195–1196 (5th Cir. 1977). Absent allegations of racial discrimination, the complaint fails to state a claim under § 1981 and the court lacks subject matter jurisdiction. *Id.; Campbell v. Gadsden County District School Board,* 534 F.2d 650, 653 n. 3 (5th Cir.1976). Plaintiffs' complaint fails to allege any type of racial discrimination as required under § 1981.

#### 2. *Section 1985*

Plaintiffs also seek damages under § 1985. There are three subsections to § 1985. Subsections (1) and (2) are not applicable to the facts alleged and the claims made by plaintiffs.[4] Although not stated, it appears plaintiffs' claim under § 1985 is brought pursuant to subsection (3).

█ To come within § 1985(3), a complaint must allege four elements: (1) a conspiracy; (2) for the purpose of depriving, directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) that the conspirators committed some act in furtherance of the conspiracy; and (4) that the plaintiff was either injured in his person or property or was deprived of having and exercising any right or privilege of a citizen of the United States. *Griffin v. Breckenridge,* 403 U.S. 88, 102–04, 91 S.Ct. 1790, 1798–1799, 29 L.Ed.2d 338 (1971).

█ The second element enunciated by the Court in *Griffin* constitutes an "intent" requirement. Satisfaction of the intent element requires proper allegations indicating that the alleged conspiracy is motivated by some racial or class-based, invidiously discriminatory animus. To satisfy this requirement it is not sufficient to allege a discriminatory animus against an individual. *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 345–47 (5th Cir.), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).

In *United Brotherhood of Carpenters and Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Court indicated it would take a narrow view of the classes protected under § 1985(3). The Court there stated:

> In the first place, it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who

---

4. Section 1985(1) deals with conspiracy to prevent person from taking federal office or preventing a federal official from discharging his or her official duties.

Section 1985(2) concerns the intimidation of participants in federal court to prevent them from testifying or the injury of a participant for having testified.

championed their cause, most notably Republicans.

463 U.S. at 836, 103 S.Ct. at 3360. The Court concluded that § 1985(3) does not reach conspiracies motivated by bias towards others on account of their economic views, status, or activities. *Id.* at 836–37, 103 S.Ct. at 3360–61. It therefore held that § 1985(3) did not reach conspiracies motivated by union or anti-union animus.

Plaintiffs' claims under § 1985(3) are insufficient. *See Eitel v. Holland,* 787 F.2d 995, 1000 (5th Cir.1986).

### IV. *Conclusion*

In *Harlow,* the Court concluded that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" 457 U.S. at 819, 102 S.Ct. at 2738–2739.

In *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984), the Court declared:

> In these circumstances, officials should not err always on the side of caution. "[O]fficials with a broad range of duties and authority must often act swiftly and firmly at the risk that action deferred will be futile or constitute virtual abdication of office."

The present suit is well within the rationale of *Harlow* and *Davis.* Charged by law with the responsibility of protecting the interests of savings depositors and the public at large, and faced with evidence of unsafe and unsound practices, Hall and Bowman concluded in good faith that they had to act quickly to intervene in the affairs of Hi-Plains. If plaintiffs' billion dollar lawsuit is allowed to continue so that these defendants are subjected to the burdensome discovery demanded by plaintiffs, other public officials charged with regulating financial institutions in the public interest cannot help but hesitate when swift, decisive action is needed. Defendants' actions did not violate any clearly established constitutional rights.

For the reasons stated above, the motion to dismiss of defendants Bowman and Hall is GRANTED.

SO ORDERED.