**Carl A. HAWKS, Sr., Plaintiff,**

**v.**

**Michael JONES, Jermaine Reese, and Kathleen E. Schmidt, Defendants.**

No. 99–CV–73076–DT.

United States District Court, E.D. Michigan, Southern Division.

June 15, 2000.

---

6. Plaintiffs' Amended Complaint should omit the federal claims dismissed pursuant to this Opinion and Order.

Kenneth J. Hardin, II, Birmingham, MI, for Carl A. Hawks, Sr.

Frederick L. Schmoll, III, Michael W. Edmunds, Gault, Davison, Flint, MI, for Michael Jones, Jermaine Reese.

1. In his Complaint, Plaintiff also named the City of Flint as a defendant. A motion for summary judgment was also timely filed on behalf of the City. However, the parties stipulated to the City of Flint's dismissal from this action and on March 28, 2000 the Court entered an Order dismissing the City with prejudice and without costs. Therefore, the only

Michael T. Joliat, Flint, MI, for Kathleen E. Schmidt.

Karen E. McDonald, Flint City Attorney's Office, Flint, MI, Peter M. Bade, Flint Asst. City Attorney's Office, Flint, MI, for City of Flint.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. *INTRODUCTION*

This Section 1983 police excessive force action, is presently before the Court on two motions for summary judgment filed by the three defendant police officers—one filed by Defendant Kathleen Schmidt–Robinson and the other filed by Defendants Michael Jones and Jermaine Reese.[1] Plaintiff has responded to both motions. Having reviewed and considered the parties' briefs and supporting evidence, and having heard the oral arguments of counsel at the hearing held on May 25, 2000, the Court is now prepared to rule on Defendants' motions. This Opinion and Order sets forth the Court's ruling.

### II. *PERTINENT FACTS*

This lawsuit arises out of an incident that occurred on June 21, 1997. At approximately 8:30 p.m. on that date, Flint police officers Kathleen Schmidt–Robinson, Jermaine Reese and Michael Jones were dispatched to 1518 Colorado Street in Flint in response to a complaint by a woman named Misty Christopher that her infant son, Kyle, was being held at that residence by her ex-boyfriend, Carl Hawks, Jr., who was not the child's father and who refused to give the child back to her.[2]

remaining defendants are the three individual police officers.

2. Ms. Christopher told the officers that she and Carl, Jr. had broken up two months earlier and that since that time he had made several attempts to contact her, including by stalking members of her family. She said that she had gone to her ex-boyfriend's home

According to the police reports and the testimony of the Defendants, when they arrived at the Colorado Street residence, Officers Schmidt knocked on the door and the door was answered by Tamara Hawks, Carl, Jr.'s mother, who had Kyle Christopher in her arms. Officer Schmidt explained that the officers were there to return Kyle to his mother.

According to the officers, at that point, Plaintiff Carl Hawks, Sr., the father of Ms. Christopher's ex-boyfriend, stormed onto the porch and stepped between his wife and Officer Schmidt. He attempted to push his wife and the baby back into the house and then forcefully shoved Officer Schmidt in the chest telling her she was not going into his house. Officers Reese and Jones then grabbed Mr. Hawks, forced him to the ground, handcuffed him, and placed him under arrest for assaulting a police officer.[3]

While Officers Reese and Jones struggled with Mr. Hawks, Officer Schmidt continued to speak with Mrs. Hawks, who cooperated and turned the baby over to Officer Schmidt. Reese and Jones meanwhile placed Hawks into a squad car and subsequently transported him to the Flint Police Department for processing.

While being transported to the police station, Hawks continued to resist and attempted to break out of the squad car by banging his head against the window and screaming obscenities. At the station, Hawks complained that his hand was broken. He stated that he broke it playing basketball four weeks earlier and then re-broke it while at work two weeks later. Although his hand had been placed in a cast, Hawks told the officers that he be-

came annoyed with the cast and took it off himself prior to June 21, 1997.

Plaintiff's version of the incident on June 21, 1997 differs considerably from the reports of the officers. Plaintiff alleges that he was listening to a baseball game on the radio when his wife informed him that there were three police officers at the door. He said that he went to the door, opened the door, went outside and addressed the officers by saying, "Hello. How can I help you?" He said that Officer Schmidt put her arm inside the door to keep it from closing and that all was "peaceful" at that point but then suddenly, without warning, he was struck from behind without warning, knocked to the ground, and then struck "numerous times," and "kicked, choked and maliciously beaten" by Defendants Jones and Reese. (He denies ever assaulting Officer Schmidt or either of the other officers.)

On June 18, 1999, Plaintiff initiated the instant lawsuit by filing a three-count Complaint in this Court. He subsequently was granted leave to file an Amended Complaint on October 25, 1999 in which he added three more counts.[4] In Count I, Plaintiff alleges a violation of his Fourth and Fourteenth Amendment rights. In Count II, Plaintiff alleges an Eighth Amendment violation. In Count III, he alleges a state law claim for "violation of M.C.L.A. 691.1407(2)." Inasmuch as the cited statute is the Michigan Governmental Immunity Statute and not a substantive tort statute, the Court construes this count as asserting state law claim of "gross negligence." *See* Amended Complaint, ¶¶ 33–36. Counts IV, V and VI of the Amended

---

that afternoon (with her infant son) to persuade him to quit bothering her family. The two quarreled and Carl, Jr. became physically abusive. (She also said he had assaulted her on several occasions in the past.) Ultimately, Carl, Jr. threw Ms. Christopher out of the house but would not allow her to take her son with her.

3. After Plaintiff's arrest, it was determined that his son, Carl Hawks, Jr., had fled the residence.

4. The changes made by Plaintiff in this Amended Complaint only affected his state law claims, which in the original complaint were grouped together in Count III. In his Amended Complaint, Plaintiff delineated each separate state law claim in separate counts, Counts III through VI.

Complaint contain state law claims of assault and battery, false arrest, and false imprisonment, respectively.

Plaintiff subsequently stipulated to the dismissal of his Eighth Amendment claim in Count II of his Amended Complaint. *See* Stipulated Order of January 21, 2000. Then, in March 2000, Plaintiff stipulated to the dismissal of the City of Flint as a Defendant in this action. *See* March 28, 2000 Stipulated Order of Dismissal of Defendant City of Flint. Therefore, only Plaintiff's claims for damages against Defendants Jones, Reese and Schmidt–Robinson in Counts I, III, IV, V and VI remain in this action.

## III. *DISCUSSION*

### A. *STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT*

Summary judgment is proper " 'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed. R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[5] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir.1996).

---

**5.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure*, § 2727, at 35 (1996 Supp.).

*See also, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989).

## B. PLAINTIFF HAVING FAILED TO INDICATE IN HIS COMPLAINT THAT HE IS SUING DEFENDANTS IN THEIR INDIVIDUAL CAPACITY MANDATES DISMISSAL OF PLAINTIFF'S FEDERAL CLAIM IN COUNT I

■ As indicated above, in Count I of his Amended Complaint, Plaintiff asserts a Section 1983 claim for damages for violation of his rights under the Fourth and Fourteenth Amendment of the United States Constitution. However, Plaintiff's failure to clearly and specifically indicate in his Amended Complaint that he is suing the individual Defendants in their individual capacities renders it unnecessary for the Court to reach the merits of this federal claim.

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

■ However, a state official sued in his official capacity is not a "person" within the meaning of § 1983. *Whittington v. Milby,* 928 F.2d 188, 193 (6th Cir.1991); *Wells v. Brown,* 891 F.2d 591 (6th Cir. 1989).

■ It is well-settled in this Circuit that, absent a clear indication that Section 1983 defendants are being in their individual capacities, courts must assume that they are being sued in their official capacities, only. *See Whittington v. Milby, su-*

pra; *Wells v. Brown, supra.* As the *Wells* court explained,

[T]he face of a complaint must indicate whether a plaintiff seeks to recover damages from the defendants directly. . . . *See Nix* [*v. Norman* ], 879 F.2d [429,] 431 [ (8th Cir.1989) ] (individual capacity suits must be clear enough to notify defendant of the personal nature of the suit). Although modern pleading is less rigid than in an earlier day, *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99 101–02, 2 L.Ed.2d 80 (1957), we have not let down all pleading barriers. It is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually. *Brandon v. Holt,* 469 U.S. 464, 474, 105 S.Ct. 873, 879, 83 L.Ed.2d 878 (1985) (Burger, C.J., concurring in the judgment).

891 F.2d at 593.

In this case, Plaintiff did not designate in the caption of his original or Amended Complaint in what capacity he is suing Defendants Reese, Jones and Schmidt. Further, there is no indication in the text of his Complaint that he is suing any of these Defendants in their individual capacities. All that is alleged is that, at the time of the acts complained of, these Defendants "were acting within the scope of their employment [as police officers]" and "under color of state law." *See* Amended Plaintiff's Complaint ¶¶ 4–7; 18–20. These allegations are wholly insufficient to establish that Plaintiff is suing the individual Defendants in their individual capacities. Quite the contrary, at best, these allegations establish that Plaintiff is suing the individual Defendants in their official capacities as police officers.[6]

■ "An official capacity claim filed against a public employee is equivalent to

---

**6.** Nor do Plaintiff's allegations that Defendants allegedly knew of and participated in the events complained of convert the lawsuit to one seeking to hold them personally and

individually accountable for any damages liability that may flow from Plaintiff's constitutional claims. *Wells, supra,* 891 F.2d at 593.

a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell,* 199 F.3d 350, 355 n. 4 (6th Cir.2000) (citing *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). *See also Monell v. Department of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978) (Official-capacity suits . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent.") Therefore, Plaintiff's Section 1983 claims in this case against Defendants Jones, Reese and Schmidt–Robinson must be evaluated under the standards applicable to the public entity they represent, i.e., the City of Flint.

■ As an initial matter, the Court notes that Eleventh Amendment immunity does not apply to the Defendants in this case. While it is true that state officials sued in their official capacity, like the state they represent, are immune from Section 1983 liability under the Eleventh Amendment, *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that immunity does not extend to municipalities or their officials.

■ However, for municipalities to be subject to liability under Section 1983, certain specific legal requisites must be fulfilled. "Section 1983 actions against municipalities require satisfaction of certain special elements, including *proof* (1) that the City pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris,* 489 U.S. 378, 387–88, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (emphasis added). *See also, Collins v.*

*City of Harker Heights,* 503 U.S. 115, 120–24, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Monell v. Department of Social Services,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Haverstick Enterprises v. Financial Federal Credit,* 32 F.3d 989, 996 n. 8 (6th Cir.1994); *Mumford v. Basinski,* 105 F.3d 264, 267 (6th Cir.1997).

■ Because Defendants Jones, Reese and Schmidt–Robinson are sued here only in their official capacities and, as such, stand in the shoes of the municipality they represent, the Section 1983 claims against them must be evaluated under the foregoing standards of municipal liability. Therefore, to withstand summary judgment on the federal claims, at a minimum, Plaintiff must present proof of the existence of a constitutionally deficient City of Flint official policy. Plaintiff has not met this burden.

Plaintiff alleges in his Complaint that he suffered damages as a result of "City of Flint . . . policies, practices and customs" which were "authorized, tolerated, ratified, permitted or acquiesced in the creation of policies, practices and customs" by city officials, thereby "establishing a de facto policy of deliberate indifference to individuals such as Carl A. Hawks, Sr.," *see* Amended Complaint ¶¶ 7, 21. However, Plaintiff may not rely upon the bare allegations in his Complaint to withstand a motion for summary judgment. Rather, he must present "affirmative evidence" supporting the essential elements of his claim. *Betkerur v. Aultman Hospital Association, supra.*

Discovery has now closed in this action [7] and Plaintiff has not identified any specific policy, practice or custom and has not come forward with any *proof* of such alleged policies, practices and customs. Indeed, Plaintiff does not even *mention* any policy, practice or custom of the City of

7. The Court notes that the discovery cut-off was originally set as January 31, 2000 but by stipulation, was *twice* extended—first until February 20, 2000 and then, on February 28, 2000 for another 60 days. Thus, Plaintiff has

had nearly 10 months to conduct discovery and produce, in response to Defendants' Motion for Summary Judgment, evidence necessary to establish his claim.

Flint or the Flint Police Department—let alone any unconstitutional policy, practice or custom—in either of his Answers to the Motions for Summary Judgment.

By application of the above-quoted authorities, and in light of the fact that Plaintiff has failed to produce any competent evidence of the existence of an unconstitutional City or Police Department policy, practice or custom to sustain "official capacity" claims against Defendants Reese, Jones and Schmidt–Robinson despite having been afforded more than ample opportunity to do so, the Court will GRANT the Defendants' Motions for Summary Judgment on Count I of Plaintiff's Amended Complaint.

### C. *PLAINTIFF'S STATE LAW CLAIMS*

■ Defendants Reese and Jones have not sought summary judgment on any of Plaintiff's state law claims in Counts III (gross negligence); IV (assault and battery); V (false arrest); or VI (false imprisonment) and Defendant Schmidt–Robinson only argues that she is entitled to summary judgment on all of these state law claims because she claims that she never physically touched Plaintiff. Plaintiff has stated in his Answer to Defendant Robinson's Motion for Summary Judgment that he will dismiss his claim for assault and battery against Defendant Schmidt–Robinson. Based upon this stipulation, the Court will DISMISS this one state law claim against this one Defendant. Plaintiff's other state law claims against Defendant Schmidt–Robinson do not turn on the "physical touching" of the Plaintiff. Therefore, summary judgment will not be entered in favor of Defendant Schmidt–Robinson on these remaining claims.

However, given the fact that the Court has dismissed Plaintiff's only remaining federal claim, there is no independent basis for continued federal court jurisdiction over Plaintiff's state law claims. Therefore, as to all of the remaining claims against Defendant Robinson as well as all of the state law claims against Defendants Reese and Jones, the Court declines to exercise supplemental jurisdiction over them. Therefore, pursuant to 28 U.S.C. § 1367(c)(3) and (d), the Court will dismiss Plaintiff's claims against all three Defendants in Counts III, V and VI, and his assault and battery claim against Defendants Reese and Jones in Count IV *without* prejudice in order to allow Plaintiff to re-assert these claims in an action filed in the appropriate state court.

### *CONCLUSION*

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendants' separately filed Motions for Summary Judgment be, and hereby are, GRANTED.

IT IS FURTHER ORDERED that Count I of Plaintiff's Amended Complaint and his Count IV claim of assault and battery against Defendant Schmidt–Robinson, only be, and hereby are, DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Counts III, V, VI, and Plaintiff's Count IV assault and battery claim against Defendants Reese and Jones are DISMISSED WITHOUT PREJUDICE.

Let Judgment be entered accordingly.