PREGERSON, Circuit Judge, specially
concurring:
Burbank Police Department Detective Angelo Dahlia witnessed his fellow police officers physically abuse suspects in custody during a high profile robbery investigation.[1] Among other acts of misconduct, Detective Dahlia saw Lieutenant Rodriguez grab a suspect by the throat and threaten him by placing a gun under his eye. Detective Dahlia also witnessed Sergeant Peñaranda repeatedly punch a suspect.
When Detective Dahlia reported these acts of misconduct to Lieutenant Murphy, his superior officer, Murphy told Dahlia to “stop his sniveling.” When Dahlia persisted with his complaints, Murphy told him he “didn’t want to hear this shit again.” Before and then after Dahlia was interviewed by Internal Affairs, Lieutenant Rodriguez and Sergeant Peñaranda, his superior officers, threatened and intimidated him.
After the FBI became involved, Lieutenant Murphy told Detective Dahlia that “[t]he Feds are doing an investigation and heads are going to roll. Don’t say anything.” Sergeant Peñaranda likewise instructed Dahlia, “It’s gonna be bad. You can’t say anything.” Lieutenant Rodriguez admonished Detective Dahlia “not to talk to the feds.” He also warned Dahlia, “Fuck with me and I will put a case on you, and put you in jail.”
Detective Dahlia reported Lieutenant Rodriguez’s threats to the Burbank Police Officers’ Association. Dahlia disclosed all of the officers’ unlawful misconduct to the Los Angeles County Sheriffs Department. Shortly thereafter, Dahlia was placed on administrative leave.
Dahlia filed a complaint under 42 U.S.C. § 1983 for First Amendment retaliation. I hold to the view that all of Dahlia’s speech that reported unlawful acts by his fellow officers is protected under the First Amendment from retaliation by his superi- or officers at the Burbank Police Department.
I. Garcetti’s Limitation on Speech Made Pursuant to Official Duties Does Not Apply to Dahlia’s Reports of Police Abuse.
I agree with the majority opinion that Detective Dahlia’s speech that reported police abuse is without a doubt a matter of public concern. Maj. Op. at 1067. I respectfully disagree with the majority on how Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) applies to this case. The majority opinion tells us that under Garcetti “[e]ven construing the facts and drawing all inferences in Dahlia’s favor, the only reasonable conclusion is that Dahlia acted pursuant to his job duties when he — as a detective investigating the Porto’s robbery and prior to receiving any threats or orders to the contrary- — reported up the chain of command to the supervising lieutenant overseeing the investigation about abuse related to *1081 that same investigation.” Maj. Op. at 1076. Thus, Dahlia’s speech that reported up the chain of command is not protected by the First Amendment against public employer retaliation. But according to the majority opinion, Dahlia’s speech that reported police abuse outside the chain of command to Internal Affairs, the Burbank Police Officers’ Association, and the Los Angeles Sheriffs Department, was not within his official duties and is protected under the First Amendment against public employer retaliation. Maj. Op. at 1077-78. In my view, the majority opinion misapplies Garcetti to Dahlia’s speech reported up the chain of command.
In Garcetti, the public employee, Richard Ceballos, was a deputy district attorney who was expected “to advise his supervisor about how best to proceed with a pending case.” Garcetti 547 U.S. at 421, 126 S.Ct. 1951. To fulfill that duty, Cebal-los wrote a memo that recommended that a pending criminal case be dismissed. Id. at 414, 421, 126 S.Ct. 1951. In the memo, Ceballos stated his opinion that an affidavit used to obtain a warrant contained misrepresentations. Id. at 414, 126 S.Ct. 1951. Ceballos’s supervisors reviewed his memo, discussed it, disagreed with its recommendation, and went forward to prosecute the case. Id. at 414-15, 428, 126 S.Ct. 1951. The Supreme Court held that “the memo was written pursuant to Ceballos’s official duties.” Id. at 421-24, 126 S.Ct. 1951. Thus, Ceballos could not base a First Amendment retaliation claim on the memo. Id.
Garcetti’s restriction on First Amendment protection for public employee’s speech pursuant to their official duties does not apply to Dahlia for three reasons: (1) Dahlia’s superior officers restricted Dahlia’s speech so that they could cover up unlawful conduct; (2) Dahlia’s superiors forbade Dahlia from reporting the police abuse; and (3) Dahlia’s superiors sought only to silence Dahlia’s speech.
First, Garcetti did not give public employers an unlimited right to restrict the speech of their public employees. “Employees in some cases may receive First Amendment protection for expressions made at work.” Garcetti 547 U.S. at 420, 126 S.Ct. 1951. Garcetti held that when public employees speak on matters of public concern, they “must face only those speech restrictions that are necessary for their [public] employers ■ to operate efficiently and effectively.” Id. at 419, 126 S.Ct. 1951. To that end, .Garcetti explained that speech made pursuant to official duties is speech that public employees express when carrying out routine functions. Id. at 421-23, 126 S.Ct. 1951. The purpose of Garcetti’s restriction is to ensure that courts do not supervise a goverm ment employer’s day-to-day operations. Id. at 420-23, 126 S.Ct. 1951.
In contrast, Dahlia’s superior officers restricted Dahlia’s speech to cover up blatantly unlawful conduct. Such conduct has no connection to the government’s legitimate efforts to run efficient and effective routine operations at issue in Garcetti. Thus, Dahlia’s superiors’ unlawful efforts are not the type of government operations that Garcetti seeks to insulate from judicial review. Id. at 421-22; 126 S.Ct. 1951; Tenn. Secondary Sch. Athletic Ass’n v. Brentwood Acad., 551 U.S. 291, 300, 127 S.Ct. 2489, 168 L.Ed.2d 166 (2007) (citing Garcetti and holding that an athletic association, like a public employer, can “impose only those conditions on ... speech [concerning matters of public concern] that are necessary to managing an efficient and effective state-sponsored high school athletic league”).
Second, Garcetti instructs us that as a “practical” matter, an official duty is a task that the “employee actually is expected to *1082 perform.” Garcetti 547 U.S. at 424-25, 126 S.Ct. 1951. It makes no sense to permit the Burbank Police Department to: (1) forbid Dahlia from reporting police abuse; and then (2) claim that the forbidden reporting was part of his official duties, and thus, not subject to First Amendment protection against retaliation.
Third, Garcetti emphasized that public employers must be able to evaluate official communications to ensure that they reflect “substantive consistency and clarity,” and are “accurate, demonstrate sound judgment, and promote the [public] employer’s mission.” Id. at 422-28, 126 S.Ct. 1951. None of this happened here. Dahlia’s superior officers made no effort to evaluate Dahlia’s speech for consistency, clarity, or conformity with a legitimate employer mission. Nor did Dahlia’s superiors raise any concern with the veracity or accuracy of Dahlia’s speech. Instead, Dahlia’s superiors sought only to silence his speech.
For these reasons, Garcetti’s bar on First Amendment protection for speech made pursuant to official duties does not apply to Dahlia’s reports of police abuse.[2] Therefore Dahlia’s reports, a matter of public concern, are protected by the First Amendment from public employer retaliation. Garcetti 547 U.S. at 420, 424, 126 S.Ct. 1951; Connick v. Myers, 461 U.S. 138, 149, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (finding that an assistant district attorney’s inquiry to coworkers made at work, that “touchfed] upon a matter of public concern,” constituted protected speech).
II. The Majority’s Chain of Command Guidelines Lead to a Vexing Result in the Context of Police Abuse.
The practical reality is that quite a few police officers are reluctant to report acts of police abuse committed by their fellow officers. The “ ‘officer code of silence’ ” describes the understanding that “ ‘an officer does not provide adverse information against a fellow officer.’ ” Cunningham v. Gates, 229 F.3d 1271, 1283 n. 19 (9th Cir.2000) (quoting Report of the Independent Commission on the Los Angeles Police Department at 168 (1991)). The public’s trust is diminished when a law enforcement officer abides by the code of silence to cover up misconduct engaged in by fellow officers.[3] To strengthen the public’s *1083 confidence in the integrity of its law enforcement officers, it is essential that an officer be encouraged or required to report misconduct committed by fellow officers.
The majority’s chain of command guidelines undermine policies that require law enforcement officers to report police abuse up the chain of command. Under the majority opinion’s approach, a police officer who complies with his duty and reports unlawful acts to his superiors, and as a consequence is fired for his speech, has no First Amendment protection. In contrast, a police officer who reports unlawful acts to the news media, and as a consequence is fired for his speech, is shielded by the First Amendment.[4] Police officers are trapped in a Catch 22: violate their duty to report up the chain of command or expose themselves to retaliation. A police officer who witnesses police abuse may turn a blind eye to avoid either consequence. This outcome “chills the speech of potential whistleblowers in a culture that is already protective of its own.” Dahlia v. Rodriguez, 689 F.3d 1094, 1104 (9th Cir.2012). Garcetti does not require this untenable result.
III. Conclusion.
I agree with the majority opinion that Detective Dahlia stated a claim under 42 U.S.C. § 1983 for First Amendment retaliation.[5] But for the foregoing reasons, I believe that Dahlia’s claim may be based on all of his speech that reported police abuse, whether reported up the chain of command or outside the chain of command.

. Because Dahlia’s case was dismissed on a motion to dismiss, we treat Dahlia’s allegations in his complaint as true in reviewing his claim. See TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir.1999).

. Contrary to the majority opinion’s suggestion, my analysis does not hinge on whether Detective Dahlia defied his superior officers’ orders, it i's "based solely on the unlawful conduct of his superior officers. Maj. Op. at 1076 n. 19. Accordingly, Garcetti’s restriction should not apply to Detective Dahlia’s reports of police abuse made to Lieutenant Murphy. From the outset, (1) Lieutenant Murphy restricted Dahlia's speech so that he could cover up unlawful conduct; (2) Lieutenant Murphy forbade Dahlia from reporting the police abuse; and (3) Lieutenant Murphy sought only to silence Dahlia’s speech.

. See, e.g., Brandon v. Holt, 469 U.S. 464, 467, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) (noting district court’s finding that ’’[d]ue to a code of silence induced by peer pressure ..., few — if any — formal complaints were ever filed by police personnel” (internal quotations marks omitted)); Blair v. City of Pomona, 223 F.3d 1074, 1080 (9th Cir.Cal.2000) (holding "evidence, if believed by the jury, would be sufficient to establish that the [Police] Department had the custom of chastising whistleblowers” and that officials in the Police Department "were aware of the police code of silence”); Matt Pearce, Jury Rules Chicago Police ‘Code of Silence’ Protected Felon Cop, Los Angeles Times, Nov. 14, 2012 (“A pervasive culture of silence in the Chicago Police Department led officers to try to cover up the brutal 2007 bar beating of a 115-pound bartender by a 225-pound off-duty officer, a federal jury has decided.”); John Hagedorn et al., Crime, Corruption and Cover-ups in the Chicago Police Department, 2013 Univ. of III at Chi. Dep't of Political Science, Anti-Corruption Report No. 7, at 1 ("The ‘blue code of silence,’ while difficult to prove, is an integral part of the department’s culture and it exacerbates the corruption problems.”).

. As we have recognized, "[i]n the context of 'good faith whistleblowing’ involving reports within a government department rather than to the public, ‘the breadth of one’s audience is irrelevant' because '[i]t would be absurd to extend First Amendment protection only to those whistleblowers who immediately appear on the local news.’ ” Robinson v. York, 566 F.3d 817, 824 (9th Cir.2009) (quoting Hufford v. McEnaney, 249 F.3d 1142, 1150 (9th Cir.2001)).

. I agree with the majority’s analysis and conclusion that Dahlia sufficiently stated an adverse employment action. The remaining requirements of Eng v. Cooley are not at issue in this appeal. See 552 F.3d 1062, 1070 (9th Cir.2009).